# EXHIBIT 9



## STATE OF INDIANA

## INDIANA UTILITY REGULATORY COMMISSION

| | |
|---|---|
| IN THE MATTER OF THE PETITION ) | |
| OF TRACFONE WIRELESS, INC. FOR ) | |
| DESIGNATION AS AN ELIGIBLE ) | **CAUSE NO. 41052 ETC 54** |
| TELECOMMUNICATIONS CARRIER ) | |
| IN THE STATE OF INDIANA FOR THE ) | |
| LIMITED PURPOSE OF OFFERING ) | |
| LIFELINE SERVICE TO QUALIFIED ) | |
| HOUSEHOLDS ) | |
| ) | |
| TRACFONE WIRELESS, INC. ) | **CAUSE NO. 43732** |
| APPLICATION FOR A CERTIFICATE ) | |
| OF TERRITORIAL AUTHORITY FOR ) | **ORDER ON ETC APPLICATION** |
| COMMUNICATION SERVICE ) | |
| PROVIDERS ) | **APPROVED:** JUN 2 9 2011 |

**BY THE COMMISSION:**
David E. Ziegner, Commissioner
Angela Rapp Weber, Administrative Law Judge

On July 10, 2009, TracFone Wireless, Inc. ("TracFone") filed with the Indiana Utility Regulatory Commission ("Commission") its Application for a certificate of territorial authority ("CTA") to provide, within the State of Indiana, communications services. Specifically, TracFone's Application explained that it intended to provide telecommunications services defined as commercial mobile radio service ("CMRS") by 47 U.S.C. 153(46). TracFone's Application for a CTA was docketed as Cause No. 43732.

On June 22, 2009, TracFone filed with the Commission its Verified Petition for Designation as an Eligible Telecommunications Carrier in the State of Indiana for the Limited Purpose of Offering Lifeline Service to Qualified Households ("Petition"). TracFone's Petition to become an Eligible Telecommunications Carrier ("ETC") was docketed as Cause No. 41052 ETC 54. Pursuant to a Docket Entry issued on July 27, 2009, the Presiding Officers consolidated Cause No. 43732 with Cause No 41052 ETC 54. The Presiding Officers also granted pursuant to the June 22, 2009 Docket Entry the Indiana Wireless Enhanced 911 Advisory Board's ("Board") Petition to Intervene.

Pursuant to a Docket Entry issued September 11, 2009, the Presiding Officers established a procedural schedule for the CTA Application and indicated that Tracfone's Petition in the ETC proceeding would be considered by the Commission after the CTA Application was heard. On December 14, 2009, Brightpoint North America LP ("Brightpoint") filed a Petition to Intervene in this consolidated Cause. The Presiding Officers granted Brightpoint's Petition to Intervene on the record at the December 21, 2009 Evidentiary Hearing held in Cause No. 43732. On July 7, 2010, a Prehearing Conference was held in Cause No. 41052 ETC 54 to establish a procedural schedule in that Cause. The Commission issued an Order in Cause No. 43732 on August 4, 2010.

On September 30, 2009, TracFone filed its direct testimony and exhibits in Cause No. 41052 ETC 54. On August 13, 2010, TracFone filed its Notice of Expanded Lifeline Offering.

On October 6, 2010, the Board withdrew its intervention, notifying the Commission that it had resolved all outstanding disputes with TracFone and urged the Commission to grant TracFone's ETC Petition at the earliest possible date. On October 13, 2010, TracFone and the OUCC filed their Notice of Settlement and Agreed Motion to Modify Procedural Schedule, which included the Settlement Agreement. Also, on October 13, 2010, TracFone prefiled its revised case-in-chief and evidence in support of Settlement Agreement, and the OUCC prefiled its case-in-chief as evidence to support the proposed Settlement Agreement.

Pursuant to notice as required by law, an Evidentiary Hearing was held on January 27, 2011 in Cause No. 41052 ETC 54 at 2:00 p.m. in Room 222 of the PNC Center, 101 West Washington Street, Indianapolis, Indiana. At the Hearing, TracFone's and the OUCC's respective evidence was admitted into the record without objection, including the Settlement Agreement. No member of the public appeared or attempted to participate at the Evidentiary Hearing.

On April 14, 2011, TracFone filed a Verified Motion to Reopen the Proceedings for the Purpose of Taking Additional Evidence ("Motion to Reopen"), to which TracFone attached its proposed additional evidence. TracFone's additional evidence consisted of the Direct Testimony of Chesley Dillon. The OUCC and Brightpoint notified the Commission that they did not object to TracFone's Motion to Reopen, stipulated to the admission of Mr. Dillon's testimony into the evidentiary record, and waived cross-examination of Mr. Dillon. The OUCC and Brightpoint further advised the Commission that neither intended to proffer any further evidence in response to Mr. Chesley's testimony. By Order dated May 25, 2011, the Commission granted the Motion to Reopen and scheduled an Evidentiary Hearing for June 8, 2011. At that Hearing, the Direct Testimony of Mr. Dillon was admitted into the record without objection. No members of the public appeared or attempted to participate at the Hearing.

The Commission, having considered the evidence in this Cause, now finds as follows:

**1.     Notice and Jurisdiction.** Due, legal, and timely notice of the Hearings held in this Cause was given and published by the Commission as provided by law. Pursuant to the Communications Act of 1934, as amended, 47 U.S.C. § 151 (the "Act"), and applicable Federal Communications Commission ("FCC") Rules, including 47 C.F.R. §§ 54.201 and 54.203, the Commission is authorized to designate Indiana ETCs thereby enabling those so designated to apply for federal universal service support under 47 U.S.C. § 254 and in accordance with Commission Orders of generic application in Cause Nos. 40785, 41052, and 42067. The Commission's jurisdiction in this case is also based on Indiana Code § 8-1-2.6-13(d)(5). The Commission therefore has jurisdiction over TracFone and the subject matter of this Cause.

**2.     TracFone's Characteristics.** TracFone is a corporation organized and formed under the laws of the State of Delaware. Its corporate headquarters is located in Miami, Florida. TracFone is a communications service provider that offers CMRS service pursuant to the authority granted by the Commission in its August 4, 2010 Order in Cause No. 43732. TracFone is also a telecommunications carrier as defined by 47 U.S.C. § 153(44).

3. **Summary of Evidence.**

    *A.* *TracFone's Evidence.* Mr. Jose Fuentes, TracFone's Director of Government Relations, testified on behalf of TracFone. Mr. Fuentes described TracFone's organization and business. He said TracFone is a 98%-owned subsidiary of America Movil, the fourth largest wireless telecommunications carrier in the world, serving over 200 million customers throughout Latin America, the Caribbean, and the United States. TracFone is the largest provider of prepaid wireless service in the United States, serving over fifteen million customers. According to Mr. Fuentes, TracFone is also the fifth largest wireless provider and largest mobile virtual network operator in the United States in terms of total customers.

    Mr. Fuentes stated TracFone provides service through a "virtual network" consisting of services obtained from numerous licensed operators of wireless networks. TracFone has provided CMRS service throughout the State of Indiana continuously for the past ten years. In Indiana, TracFone obtains service from several underlying carriers, including AT&T Mobility, T-Mobile, and Verizon Wireless. TracFone's arrangements with these providers enable it to offer services wherever any of them offer service in the State of Indiana.

    Mr. Fuentes stated TracFone has the ability to provide all services and functionalities supported by the universal service program detailed in the FCC Rules, throughout Indiana. Upon designation as an ETC, TracFone plans to make available to qualified low-income Indiana households Lifeline service under its brand name SafeLink Wireless®. Mr. Fuentes said TracFone requests ETC designation statewide in all exchanges to the extent its underlying carriers have facilities and coverage.

    The SafeLink Wireless® service TracFone seeks authority to provide in Indiana will offer three Lifeline service plans to all qualified Indiana consumers. Under all three plans customers (i) receive an allocation of free airtime minutes each month, (ii) receive a free basic 911 and enhanced 911 ("E911") compliant wireless handset at TracFone's expense, (iii) may dial 611 from their handset to reach TracFone customer service and the time used for such calls is not charged against the customer's available minutes, and (iv) may purchase for $0.10 per minute additional airtime minutes beyond the monthly allocated minutes. The number of free airtime minutes allocated each month varies by plan: 68 under Plan A, 125 under Plan B and 250 under Plan C. Under all three plans, minutes may be used for local calling or long distance calling anywhere in the United States. However, under Plan A, minutes may also be used for international calling to over sixty international destinations. Also under all three plans, minutes may also be used for text messaging, charged at three messages per minute under Plan A and one message per minute under Plans B and C. Under Plans A and B, unused minutes carry over and remain available for use in subsequent months, while in Plan C, unused allocated minutes expire at the end of each month and do not carry over for use in subsequent months. Finally, under all three plans SafeLink Wireless® customers receive important vertical features such as caller ID and voice mail at no additional charge.

    Mr. Fuentes testified TracFone's planned Lifeline service offering for Indiana provides all services and functionalities required under applicable federal and state law, including voice grade access to the public switched network; local usage; dual tone multi-frequency ("DTMF") signaling, or its functional equivalent; single-party service, or its functional equivalent; access to

basic 911 and E911 emergency service; access to operator services; direct dial access to interexchange service; and access to directory assistance. Mr. Fuentes said TracFone's service is also effectively toll limited because customers cannot receive calls or make non-emergency calls when their allotted minutes (and any additional prepaid minutes purchased) have been used or expired.

According to Mr. Fuentes, TracFone's service is of the same quality and reliability as that of its underlying vendors (in Indiana AT&T Mobility, Verizon Wireless, and T-Mobile), several of the largest, most highly regarded wireless service providers in the nation. TracFone customers, including its SafeLink Wireless® Lifeline customers, will benefit from any network improvements by those carriers. He said TracFone's use of several underlying carriers enables it to provide levels of redundancy and service reliability that would not be possible over a single carrier network. Mr. Fuentes stated TracFone has committed to comply with all applicable provisions of The Wireless Association® Consumer Code for Wireless Service ("CTIA").

Mr. Fuentes testified TracFone's designation as an ETC to offer Lifeline service in Indiana will not adversely impact the federal Universal Service Fund ("USF"). TracFone will only receive reimbursement from the Lifeline service fund. However, TracFone's Lifeline service offering will not increase the number of people eligible for Lifeline assistance and therefore will not increase the overall potential cost to the USF to provide Lifeline assistance. In Mr. Fuentes's opinion, however, any actual increase in the cost to the USF for providing Lifeline assistance will be outweighed by the benefit of fulfilling the purpose for which the Lifeline portion of the USF exists.

Mr. Fuentes explained how TracFone's SafeLink Wireless® service will increase customer choice and provide substantial public interest benefits to qualified customers, including larger local calling areas and the opportunity to control their costs. TracFone does not impose roaming charges on SafeLink Wireless® customers, allowing them to utilize their Lifeline service wherever they are as long as there is wireless coverage. He said TracFone's SafeLink Wireless® service requires no contract, no commitment for any term, and no finding of creditworthiness. He said Lifeline customers are not required to pay access charges and activation fees. Further, Mr. Fuentes said the usage and remaining minute information is stored on the customer's handset where it is always available to the customer.

Mr. Fuentes testified TracFone's SafeLink Wireless® service may help unemployed individuals overcome difficulties in finding a job by allowing them to be reached by potential employers at any time and location and to respond to potential employers immediately. He testified it may also assist employed low-wage individuals by allowing them to stay in contact with employers, manage relationships with supervisors, and respond to requests to work additional shifts or hours. For those who live in rural communities and must drive significant distances to work, schools, stores, and other locations, TracFone's SafeLink Wireless® service can provide convenient telecommunications service, both from their residences and when they are away from their homes. Mr. Fuentes said TracFone's SafeLink Wireless® will allow them to reach their children wherever they may be, and vice versa, and enable them to call for emergency assistance while away from home.

Mr. Fuentes provided Exhibits JF-11 and JF-12, which indicate that fewer than one in ten Lifeline eligible Hoosiers receive Lifeline service. Mr. Fuentes testified that based on TracFone's experience in other states, its offering will increase the percentage of Lifeline eligible consumers who receive Lifeline service. TracFone intends to advertise the availability of its SafeLink Wireless® service (if its ETC designation is granted), using a variety of advertising media, focused where eligible consumers are most likely to see it.

Mr. Fuentes testified concerning TracFone's commitments to comply with laws and regulations applicable to ETCs and Lifeline service. Through its underlying carriers, TracFone can remain functional in emergency situations. TracFone commits to provide service upon reasonable request to all consumers throughout its proposed ETC designated service area, and will provide equal access to interexchange services of the customer's choice in the event all other ETCs in TracFone's service area relinquish their ETC designations.

Mr. Fuentes stated that, consistent with FCC requirements, TracFone requires applicants for its SafeLink Wireless® service to certify under penalty of perjury that the applicant satisfied the eligibility requirements for Lifeline service. This certification process occurs before a customer receives service and reoccurs annually when service is renewed. TracFone retains the records of these customer certifications. He said TracFone automatically de-enrolls any SafeLink Wireless® customer who has no usage over a period of time exceeding two months. During the thirty-day period following such de-enrollment, TracFone continues to provide service at its own expense, without reimbursement from the USF, while attempting to contact the customer by email, direct mail, and voice messages. Mr. Fuentes explained that during that thirty-day period, the customer may re-enroll and have SafeLink Wireless® service restored. Otherwise, TracFone deactivates the customer's wireless service at the end of the thirty-day grace period. However, he stated customers are always able to dial 911, even if service is deactivated.

Mr. Fuentes testified TracFone accounts for its Lifeline service revenues and expenses separately from its non-Lifeline revenues and expenses. TracFone will use 100% of the Lifeline funds it receives from the federal USF to provide Lifeline service, and these funds will not be used to purchase handsets for Lifeline customers. Further, he stated, TracFone will submit regular reports, as detailed in Paragraph 7 below, which the Commission requires from ETC designees. In addition, TracFone will submit, on a confidential basis to both the OUCC and the Commission, quarterly reports consisting of: a) the total number of active TracFone Lifeline service customers in Indiana as of the beginning of the last calendar quarter, b) the total number of new TracFone Lifeline service customers in Indiana added during the last calendar quarter, c) the total number of inactive TracFone Lifeline service customers in Indiana whose service was reactivated during the last calendar quarter, d) the total number of TracFone Lifeline service customers in Indiana whose TracFone service was deactivated during the last calendar quarter, e) the number of active TracFone Lifeline service customers in Indiana at the end of the last calendar quarter, and f) the total revenue TracFone claimed from the federal USF for providing Lifeline service in Indiana during the last calendar quarter.

He testified TracFone will also submit, on a confidential basis to both the OUCC and the Commission, annual reports starting in 2012, which will include: a) total number of TracFone Lifeline service customers in Indiana receiving Lifeline service from TracFone for one month or more during the last calendar year, b) total number of TracFone Lifeline service customers in

5

Indiana whose service was deactivated by TracFone during the last calendar year due to non-use or cancellation, and c) TracFone's total annual expenditures for promoting or advertising Lifeline service in Indiana during the last calendar year, detailed by category of promotional activity (e.g., print media, broadcast media, and direct mailings).

Finally, Mr. Fuentes sponsored Exhibit JF-13, which is TracFone's proposed Informational Tariff Applicable to Lifeline Service Offered in the State of Indiana ("Informational Tariff"). TracFone will file the Informational Tariff with the Commission if its request is in this Cause is granted.

Mr. Chesley Dillon, TracFone's Vice President for Corporate Taxation, provided testimony on behalf of TracFone. He stated TracFone is current with respect to the remittance of InTRAC surcharges and IUSF assessments, as ordered by the Commission in its Order on Rehearing in Cause No. 43732 issued November 4, 2010. Mr. Dillon further testified that TracFone intends to timely file its Telecommunications Public Utility Fee Report so the Commission may compute and bill TracFone for the Indiana Public Utility Fee for the period covering August 4, 2010 through December 31, 2010.

   *B.*  *OUCC's Evidence.* Mr. Ronald L. Keen, Senior Analyst in its OUCC's Resource Planning and Communications Division, testified on behalf of the OUCC and in support of the Settlement Agreement. He explained TracFone is not seeking high-cost support available to rural ETCs. Further, TracFone did not address whether it would seek state funding when the Indiana Low-Income Assistance Program ("ILAP") goes into effect. He noted the concept of ILAP was developed prior to and without consideration of prepaid providers becoming certified ETCs. Thus, the Commission may need to provide clarification in the future.

Mr. Keen provided an overview of the terms of the proposed Settlement Agreement. He explained TracFone initially planned to offer a single Lifeline service option with sixty-three free minutes of airtime each month. TracFone recently expanded its offering to three unique service options. He stated Lifeline customers could choose which plan is best for them. Mr. Keen provided a detailed description of the Lifeline Service Plans TracFone agreed to offer in Indiana if its request for Indiana ETC status is granted. Mr. Keen also said customers could contact customer service by dialing 611 from the TracFone handset without incurring additional charges. Also, TracFone could offer additional minutes under any of the plans at a retail rate less than but not to exceed $0.10 per minute without first having to seek Commission approval.

Mr. Keen discussed the potential impact of Commission approval of TracFone's ETC designation request on Indiana's low take rate for Lifeline assistance. He noted Indiana has one of the lowest take rates in the nation for federal Universal Service support for eligible low-income households. He included in his testimony color-coded maps comparing Indiana's Lifeline take rates with those of other states, including states with take rates that materially improved after TracFone and/or other prepaid wireless service providers became ETCs in those states. He stated the OUCC is not satisfied with the current take rate in Indiana. As of 2009, Indiana is one of only six states with Lifeline take rates below 10%.

In Mr. Keen's opinion, the designation of TracFone as an ETC would increase the Lifeline take rate. Mr. Keen analyzed data from states where TracFone was the predominant

ETC in 2009. He said TracFone appears to be successful in increasing the number of people taking advantage of its Lifeline services through its SafeLink Wireless® offering. Mr. Keen testified that approval of TracFone's Lifeline service offerings would provide new service options to Indiana low-income households. He explained a new mobile service ETC provider with multiple Lifeline service options would be added, and each option would provide different advantages to customers with different service needs.

As a part of the Settlement Agreement, Mr. Keen stated TracFone agreed to submit quarterly and annual reports to the Commission and the OUCC concerning its Lifeline offering. Mr. Keen said these reports will provide information to help evaluate the level of success for prepaid wireless Lifeline service offerings. Mr. Keen provided details concerning the content of the proposed filings.

In addition to anticipated customer-specific benefits from increased availability and utilization of supported Lifeline service by low-income households, Mr. Keen testified that broader economic benefits could be expected if TracFone receives its requested ETC designation. He explained that due to TracFone's business relationship with Brightpoint, a large central Indiana employer that handles logistics for the wireless handsets used by TracFone customers, jobs could be created in Indiana as a result of TracFone's expanded Lifeline offering in Indiana and other states.

Mr. Keen stated the OUCC received Public Comments concerning TracFone's proposal to provide free wireless handsets and a block of free airtime to eligible Indiana Lifeline customers. The vast majority of the Public Comments favored granting TracFone's ETC designation request. According to Mr. Keen, only a very small number of comments opposed TracFone's request.

Mr. Keen concluded by stating the Commission should grant TracFone's request to be designated as a Lifeline-only ETC provider would further three policy goals: 1. eligible low-income households would have a competitive choice for Lifeline services, 2. take rates in Indiana would increase, and 3. economic benefits would be realized in Indiana.

**4.** **The Settlement Agreement.** According to the Settlement Agreement, the parties reached a negotiated agreement concerning the issues presented in this Cause. The terms of the Settlement Agreement are summarized below.

TracFone will offer Lifeline service in Indiana pursuant to three service plans—Lifeline Service Plan A, Lifeline Service Plan B, and Lifeline Service Plan C. The details of the plans are included in the Settlement Agreement. The plans will be provided free of charge to eligible Indiana customers.

The Settlement Agreement also provides the following concerning TracFone's Lifeline offering:

a) Tracfone agrees to ensure that Indiana Lifeline customers are able to contact TracFone customer service by dialing the 611 dialing code on their handsets without

incurring any charges for such calls and without reducing or otherwise limiting their remaining airtime;

  b) TracFone may in the future offer additional minutes under any of the three Lifeline Service Plans described above, provided the retail rate charged for such additional airtime not exceed $0.10 per minute;

  c) TracFone acknowledges that it is not eligible to receive and will not seek high cost support under either the Indiana USF or the Federal USF programs; and

  d) Although not a signatory to the CTIA Consumer Code, TracFone agrees to comply with all applicable requirements for service provided to its Indiana Lifeline service customers.

The Settlement Agreement provides that TracFone will submit the following quarterly reports to the Commission and the OUCC:

  a) The total number of active TracFone Lifeline service customers in Indiana as of the beginning of the last calendar quarter;

  b) The total number of new TracFone Lifeline service customers in Indiana added during the last calendar quarter;

  c) The total number of inactive TracFone Lifeline service customers in Indiana whose service was reactivated during the last calendar quarter;

  d) The total number of TracFone Lifeline service customers in Indiana whose TracFone service was deactivated during the last calendar quarter;

  e) The number of active TracFone Lifeline service customers in Indiana at the end of the last calendar quarter (add Lines a through c above, then subtract Line d ); and

  f) The total revenue TracFone claimed from the federal USF for providing Lifeline service in Indiana during the last calendar quarter.

The Settlement Agreement also provides that TracFone will submit the following annual reports to the Commission and the OUCC, starting in 2012 and by February 15 of each year:

  a) The total number of TracFone Lifeline service customers in Indiana receiving Lifeline service from TracFone for one month or more during the last calendar year;

  b) The total number of TracFone Lifeline service customers in Indiana whose service was deactivated by TracFone during the last calendar year due to non-use or cancellation (e.g., a report submitted by February 15, 2012, will cover data from January 1, 2011 through December 31, 2011);

  c) TracFone's total annual expenditures for promoting or advertising Lifeline service in Indiana during the last calendar year, detailed by category of promotional activity (e.g., print media, broadcast media, and direct mailings).

8

According to the Settlement Agreement, upon approval of an Order in this Cause by the Commission that designates TracFone as an ETC provider, TracFone agrees to submit to the Commission its proposed Informational Tariff for its Indiana Lifeline Plans consistent with the Commission-approved Order. If TracFone makes changes to its Lifeline offering, it will submit a revised Informational Tariff to the Commission.

The parties agree that the agreement reached as enumerated by the Settlement Agreement shall not constitute a waiver of any position a party may take with respect to a matter resolved in this proceeding in a future proceeding, nor shall nor it be cited as precedent, except as necessary to enforce its terms.

5. **Requirements for ETC Designation**. In Cause No. 40785, the Commission adopted the FCC's original eligibility requirements for designation of ETCs in the State of Indiana. Accordingly, each Indiana ETC receiving federal Universal Service support is required by 47 C.F.R. § 54.101(b) to offer the nine universal services or functionalities set out in 47 C.F.R. § 54.101(a)(1)-(a)(9). In addition to offering those nine services or functionalities, ETCs are required by 47 C.F.R. §§ 54.405 and 54.411 to offer qualifying low-income customers discounted service supported under the federal Universal Service Lifeline program, which is the only Universal Service program covered by TracFone's limited ETC designation request for its proposed Indiana ETC designated service areas. If the Petition is approved, 47 C.F.R. § 54.201(d)(2) will require TracFone to publicize the availability and cost of the nine supported services and TracFone's Lifeline Service Plans and the corresponding charges using media of general distribution throughout the service areas for which designation is requested. Pursuant to the Commission's November 5, 1997 Order in Cause No. 40785, carriers seeking ETC designation in Indiana must also file proposed Lifeline tariffs and boundary maps depicting the areas for which ETC designation is sought.

The FCC also requires a public interest analysis for ETC designation requests. *See* 47 U.S.C. § 214(e)(2); *Federal-State Joint Board on Universal Service*, 20 FCC Rcd 6371, ¶ 42 (2005) ("2005 FCC ETC Order"). The Commission adopted the FCC's eligibility guidelines by its June 8, 2005 Order in Cause No. 41052-ETC-47. TracFone and the OUCC presented sufficient evidence concerning the requirements for ETC designation, as presented in greater detail below.

6. **Commission Discussion and Findings.** The Commission begins with a general discussion of settlements. Settlements presented to the Commission are not ordinary contracts between private parties. *United States Gypsum, Inc. v. Indiana Gas Co.*, 735 N.E.2d 790, 803 (Ind. 2000). When the Commission approves a settlement, that settlement "loses its status as a strictly private contract and takes on a public interest gloss." *Id.* (quoting *Citizens Action Coalition v. PSI Energy*, 664 N.E.2d 401, 406 (Ind. Ct. App. 1996)). Thus, the Commission "may not accept a settlement merely because the private parties are satisfied; rather [the Commission] must consider whether the public interest will be served by accepting the settlement." *Citizens Action Coalition*, 664 N.E.2d at 406.

Furthermore, any Commission decision, ruling, or order, including the approval of a settlement, must be supported by specific findings of fact and sufficient evidence. *United States Gypsum*, 735 N.E.2d at 795 (citing *Citizens Action Coalition v. Public Service Co.*, 582 N.E.2d

330, 331 (Ind. 1991)). The Commission's own procedural rules require that settlements be supported by probative evidence. 170 IAC 1-1.1-17(d). Therefore, before the Commission can approve the Settlement Agreement, we must determine whether the evidence in this Cause sufficiently supports the conclusions that the Settlement Agreement is reasonable, just, and consistent with the purpose of Indiana Code ch. 8-1-2, and that the Settlement Agreement serves the public interest.

      *A.*    *ETC Designation.*    The Commission first addresses the requirements to be designated as an ETC provider. Universal Service funds are provided in four areas: (1) funds to support service to high cost areas; (2) provision of discounted telecommunications and internet access to eligible schools and libraries (also known as the "E-Rate" program); (3) funds to assist low-income customers by provision of a monthly discount on telecommunications costs and a credit towards connection for service (the Lifeline and Link Up programs); and (4) provision of discounted service to rural health care providers. *In the Matter of Comprehensive Review of Universal Service Management, Administration and Oversight*, 20 FCC Rcd 11307, ¶ 5 (2005).

TracFone seeks ETC designation in Indiana for the limited purpose of offering Lifeline service. Accordingly, TracFone's application does not implicate the high-cost program, the E-Rate program, or the rural health program. Since TracFone's Lifeline service offerings provide a wireless handset at no cost to the consumer and the consumer incurs no charges to initiate or activate service under TracFone's Lifeline offerings, the Link Up program is not implicated by TracFone's ETC application.

As more fully discussed below, TracFone meets the nine required services criteria for ETC designation as contained in 47 U.S.C. § 214(e)(1) and related FCC Rules, and TracFone has met its burden of proving that granting its request for ETC status for the limited purpose of offering Lifeline service in Indiana satisfies the public interest analysis the Commission is required to perform under the 2005 FCC ETC Order.

      **1.**    **Common Carrier Status.** The first requirement for ETC designation is status as a common carrier under federal law. A common carrier is generally defined by 47 U.S.C. § 153(10) as a person engaged as a common carrier on a for-hire basis in interstate telecommunications utilizing either wire or radio technology (except for radio broadcasters). As a provider of wireless telecommunications services, we find that TracFone is a "common carrier" for purposes of obtaining ETC designation under 47 U.S.C. § 214(e)(1).

      **2.**    **Lifeline Service Offering Requirements.** TracFone provides Lifeline service under the brand name SafeLink Wireless® as a designated ETC in a number of other states. TracFone's proposed SafeLink Wireless® service offering for Indiana offers customers a choice among three Lifeline Service Plans. Under Plan A, the customer will receive 68 free minutes of usage each month. Any minutes that are unused in any month carry over and remain available for use in subsequent months. Minutes may be used for local calling, long distance calling anywhere in the United States, and international calling to over sixty international destinations selected by TracFone. In addition, minutes may be used for text messaging at the rate of three messages per minute.

Under TracFone's Plan B, the customer will receive 125 free minutes of usage each month, and any unused minutes carry over and remain available for use in subsequent months. The minutes may be used for local and long distance calling within the United States. However, under Plan B the minutes may not be used for calling international destinations. In addition, minutes may be used for text messaging at the rate of one message per minute.

Under Plan C, the consumer will receive 250 free minutes of usage each month. However, any unused minutes will expire at the end of the month and will not carry over and remain available for use in subsequent months. The minutes may be used for local and long distance calling within the United States, but may not be used for international calls. In addition, minutes may be used for text messaging at the rate of one message per minute.

For each of TracFone's three Lifeline Service Plans, TracFone will incur the cost of providing a wireless handset free of charge to each SafeLink Wireless® customer. TracFone does not seek or obtain reimbursement for the cost of the handset from the USF. Customers may reach TracFone's customer service center from their handsets by dialing 611, and the time used for 611 calls will not be charged against customers' available minutes. Under all three plans, the monthly minutes stated above and provided as part of the SafeLink Wireless® Lifeline service are provided at no charge to the customer. Under all three plans, the customer may purchase additional airtime minutes for not more than $0.10 per minute. TracFone's Lifeline service offerings are described in its Informational Tariff Applicable to Lifeline Service Offered in the State of Indiana.

**3. Advertising Requirement.** TracFone provided evidence that it will advertise the availability of its SafeLink Wireless® service offering throughout Indiana in a manner that informs the public about the availability and nature of the three Lifeline Service Plans it will offer to eligible Indiana customers, along with information about rates charged for additional minutes of use. TracFone also presented evidence that it will advertise its Indiana Lifeline service offerings through several different media focused on reaching the low-income customers who are likely to be eligible for and take advantage of TracFone's SafeLink Wireless® service. TracFone's evidence includes examples of its billboard, bus, bus stop, pay phone, and website advertising, along with a screen shot from a television commercial spot, all for its SafeLink Wireless® service.

TracFone has fulfilled its burden of proof with respect to the advertising requirements for ETC designation.

**4. TracFone's Designated ETC Service Area.** 47 C.F.R. § 54.207(a) defines a "service area" as a "geographic area established by a state commission for the purpose of determining universal service obligations and support mechanisms." TracFone is already authorized to provide telecommunications service throughout the State of Indiana, but only offers service in areas where its underlying facilities-based wireless service providers have coverage. TracFone provides its wireless service by reselling the wireless service provided by three facilities-based providers in Indiana, namely AT&T Mobility, Verizon Wireless, and T-Mobile. Accordingly, TracFone seeks designation as an ETC for the limited purpose of offering Lifeline service in all areas of the State of Indiana in which AT&T Mobility, Verizon Wireless,

and T-Mobile offer wireless service, as depicted in service area maps attached to TracFone's settlement testimony (Exhibit JF-1).

Pursuant to pursuant to 47 § C.F.R. 54.207, a rural LEC's service area is defined as its study area. The maps submitted by TracFone do not provide sufficient detail to permit the Commission to determine if TracFone intends to serve the entire rural LEC territory or only portions of it. Accordingly, prior to offering Lifeline services in Indiana, TracFone shall submit to the Commission under this Cause a list of Indiana wire centers and a revised service area description, or map, that clearly indicates the areas TracFone intends to serve.

**5.** **Provision of Supported Services.** According to the evidence, TracFone provides the supported services identified by the FCC in 47 C.F.R. § 54.101(a), as follows:

A. <u>Voice-Grade Access to the Public Switched Telephone Network</u>. The FCC has concluded that voice-grade service means the ability to make and receive phone calls within a specified band width frequency range. 47 U.S.C. § 54.101(a)(1). The evidence is undisputed that TracFone meets this requirement by enabling its customers to transmit and receive voice communications using the facilities of its underlying carriers.

B. <u>Local Usage</u>. ETCs must include local usage beyond providing simple access to the public switched telephone network as part of a universal service offering. An applicant for ETC designation must demonstrate that it offers a local usage plan that is "comparable" to the plan offered by the Incumbent Local Exchange Carrier ("ILEC") in the relevant service territory. 47 C.F.R. § 54.202(a)(4). In analyzing whether an ETC applicant's plan is comparable to the underlying ILECs, the FCC reviews all aspects of the plan on a case-by-case basis, including the nature of the supported service, the size of the local calling area, the inclusion of additional services (e.g., caller I.D.) and the amount of local usage. *See* 2005 FCC ETC Order at ¶33. As the record demonstrates, TracFone will offer users the ability to send and receive local phone calls wherever it offers service. The evidence also demonstrates TracFone intends to offer Lifeline customers access various other features at no cost to the customer, including voice mail, caller ID, call waiting services and E911 capabilities. TracFone's offering will be comparable to the underlying ILEC plans, and therefore satisfies this requirement.

C. <u>Dual Tone, Multi-Frequency Signaling or Its Functional Equivalent</u>. DTMF is a method of signaling that facilitates the transportation of call set-up and call detail information. All telephone handsets provided by TracFone are DTMF-capable consistent with this requirement. The evidence is undisputed that TracFone meets this requirement.

D. <u>Single-Party Service or Its Functional Equivalent</u>. TracFone's service is single-party service because it provides a dedicated message path for the length of all customer calls. TracFone does not provide "multi-party" or "party line" services. The evidence is undisputed that TracFone meets this requirement and provides single-party service for the full duration of all customer calls.

E. <u>Access to Emergency Services</u>. The ability to reach a public emergency provider by dialing 911 is a required element in any Universal Service offering.

TracFone provides its customers access to 911 emergency service in accordance with this requirement, and consistent with FCC regulations, everywhere its handsets can receive a signal in the State of Indiana. As a condition of the Petitioner's FCC Forbearance Order, TracFone will provide its Lifeline customers with basic 911 and E911 access regardless of activation status and availability of prepaid minutes;[1] will provide its new Lifeline customers with E911 compliant handsets; and will replace, at no additional charge to the customer, noncompliant handsets of existing customers who obtain Lifeline-supported service. TracFone provided documentation in this Cause as Exhibit JF-7 from its underlying carriers that TracFone customers will have the same access to basic 911 and E911 service as the underlying carriers' own customers. Further, after providing ninety days advance notice to Public Safety Answering Points in its proposed designated service area, TracFone self-certified that it provides customers with basic 911 and E911 service. Thus, we find Petitioner has satisfied this requirement.

F.    Access to Operator Services. Access to operator services is defined as any automatic or live assistance provided to a customer to arrange for the ability for the billing or completion, or both, of a telephone call. 47 C.F.R. 54.101(a)(6). The evidence is undisputed that TracFone meets this requirement by providing its customers with access to operator services through its underlying carriers.

G.    Access to Interexchange Services. In order to qualify for ETC designation, TracFone must establish that its customers have the ability to make and receive interexchange, or long distance, calls. Interexchange service is included in all of TracFone's Lifeline service offerings. Each of TracFone's Lifeline service plans allows customers the option of using any or all of the free monthly minutes for interexchange calls. The evidence is undisputed that TracFone meets this requirement

H.    Access to Directory Assistance. TracFone provides its customers with access to directory assistance. The evidence is undisputed that TracFone meets this requirement by providing directory assistance service through its underlying carriers.

I.    Toll Limitations for Qualifying Low-Income Customers. TracFone's customers cannot receive calls or make non-emergency calls when their allotted minutes have been used or expired. Accordingly, TracFone's service automatically satisfies the toll limitation requirement.

6.    **Public Interest Considerations.** TracFone seeks designation as an ETC in all service areas in Indiana that are served by its underlying wholesale carriers, AT&T Mobility, T-Mobile, and Verizon Wireless. Accordingly, the Commission must conduct a public interest analysis. 2005 FCC ETC Order, ¶¶ 42-43. In the absence of specific statutory strictures for evaluating the public interest, the FCC has recommended that ETC designations be analyzed "in a manner that is consistent with the purposes of the Act itself, including the fundamental goals of preserving and advancing universal service; ensuring the availability of quality communications at just, reasonable, and affordable rates; and promoting the deployment of advanced

---

[1] Petition of TracFone Wireless, Inc for Forbearance from 47 U.S.C. 214(e)(1)(A) and 47 C.F.R. 54.201(i), FCC 05-165, at Par 16.

telecommunications and information services to all regions of the nation including, rural and high-cost areas." 2005 FCC ETC Order, ¶ 40.

        A.      Use of Federal USF Lifeline Funding. TracFone has committed to the FCC that it will use 100% of the funds it receives from the federal USF to provide Lifeline service, and those funds will not be used to provide the handsets to Lifeline customers. We find that TracFone's use of USF funds for Lifeline service is consistent with current FCC regulations. *See In re Federal-State Joint Board on Universal Service, Promoting Deployment and Subscribership in Unserved and Underserved Areas, Including Tribal and Insular Areas*, 18 FCC Rcd 10958 at ¶18 (2003).

        B.      Impact on USF. Since TracFone is seeking a limited, Lifeline-only ETC designation, the dollar amount TracFone might receive from the federal USF would be limited to the discount funding allowed per customer times the number of Lifeline customers served. The fundamental purpose of the Lifeline program must be to provide Lifeline assistance to any and all eligible consumers. However, we also recognize that costs for the low-income portion of the USF are increasing rapidly. While it is in the public interest that Lifeline eligible customers be connected to affordable telecommunications service, preventing misuse of the Lifeline program is important in controlling unnecessary growth of the fund and increased USF surcharges for all Indiana telecommunications customers. The Commission is concerned that prepaid wireless providers may be especially vulnerable to misapplication of the program due to the appeal of free phones and free minutes. We find that extra safeguards imposed in the Settlement Agreement in the form of additional reporting requirements, termination of service for contiguous periods of non-use (as discussed below), and a condition to deal directly with the customer and obtain documentation demonstrating eligibility as required for a similarly situated ETC[2] are important tools to curb misuse of the fund.

We find that TracFone's policy of terminating service to prepaid customers who have not used any airtime minutes for more than sixty days will help prevent overpayment of Lifeline benefits to customers who have dropped their prepaid wireless service with TracFone without notifying TracFone of that change, thereby helping to prevent waste of federal USF support dollars received.

        C.      Creamskimming. The FCC has concluded that applicants seeking ETC designation solely for Lifeline purposes need not perform a creamskimming analysis. *See Virgin Mobile USA, L.P. Petition for Forbearance from 47 U.S.C. § 214(e)(1)(A) Petitions for Designation as an Eligible Telecommunications Carrier in the State of New York, North Carolina, Tennessee and Virginia*, Order, 24 FCC Rcd 3381, fn. 101 (2009).

        D.      Willingness to Serve All Customers Located in TracFone's Proposed ETC Service Area. Pursuant to 47 C.F.R. §54.202(a)(1)(i), TracFone has agreed to provide service upon reasonable request throughout its designated service area. The service area for which TracFone has requested ETC designation consists of the service areas of the three facilities-based wireless carriers, T-Mobile, AT&T Mobility, and Verizon wireless, whose service TracFone resells in Indiana. TracFone has committed to provide its service upon

---

[2] Final Order in Cause No. 41052 ETC 55, November 10, 2010, Section 8(e).

reasonable request to all consumers within that service area. Accordingly, we find that TracFone has demonstrated its willingness and ability to provide service throughout its requested service area.

E. Increased Customer/Competitive Choice. While TracFone currently offers its prepaid wireless service throughout the State of Indiana, it currently cannot offer its SafeLink Wireless® service plans in Indiana. Since TracFone's SafeLink Wireless® service is wireless, it offers eligible Lifeline customers an alternative to wireline Lifeline services. Some Lifeline-eligible customers may feel that the benefits of unlimited local calling over a landline phone outweigh any lack of mobility. Other customers may find that the mobility of wireless service and additional features included at no charge provides compensation for not having unlimited local usage. Regardless of how any individual customer weighs the pros and cons of TracFone's SafeLink Wireless® service offering against other available Lifeline service offerings, TracFone's SafeLink Wireless® service, if available in Indiana, would offer Indiana's Lifeline-eligible consumers greater choice of Lifeline-supported service offerings.

Currently, only one other similarly-situated prepaid wireless carrier is designated as an ETC for the limited purpose of offering Lifeline services. TracFone will offer a different coverage area and will potentially reach Lifeline-eligible customers in parts of the state not currently served by a wireless ETC in Indiana. TracFone's Lifeline service offerings will provide all Lifeline-eligible consumers in Indiana not only a wireless service alternative to traditional landline service, but an alternative to other wireless ETCs

F. Affordable Rates. Under all three of TracFone's Lifeline service offerings, TracFone will provide customers with 911-compliant wireless handsets at no charge and without activation or installation charges. Additional services such as caller ID and voice mail are included at no charge. As a result, TracFone's Lifeline customers will receive service at no cost to them as long as they do not exceed the allotted minutes under the plan chosen by the customer. Customers may use their allotted minutes for local or long distance calls within the United States, text messaging, and under Plan A, for international calls. Additional minutes will be priced at not more than $0.10 per minute. The OUCC agrees that TracFone's rates are affordable. The Commission finds that designation of TracFone as an ETC for the limited purpose of providing Lifeline service will serve the public interest by promoting the availability of quality telecommunications services to low-income customers at just, reasonable, and affordable rates.

G. Advantages and Disadvantages of TracFone Offering. As already noted in previous sections, TracFone's Lifeline service offerings will provide several advantages that qualify as unique when compared to other Lifeline service offerings available to Indiana consumers. TracFone will require no long-term contracts; will not impose early termination fees; will provide consumers with free 911-compliant wireless handsets; will not charge any activation, installation, or other start-up fees; and will offer qualified low-income households a variety of plans from which to choose. To the consumer who stays within the included minutes, the service will be at no cost, and will include additional service features such as voice mail, caller ID, and text messaging.

There are tradeoffs that some may consider disadvantages. For example, land-line service would offer unlimited local calling; however, long distance calls can be made for an additional cost and would only be available while the consumer is at home. Under TracFone's service, once the customer uses up the included minutes each month, the customer cannot receive calls or make non-emergency calls unless the customer can afford to purchase more minutes. This acts as a toll control feature that may be attractive to a low-income customer concerned about usage charges and long-term contracts. Based on the evidence presented, the Commission finds TracFone has satisfied its burden of showing that the advantages of its service compared to any disadvantages weighs in favor of granting TracFone the limited ETC status it seeks in Indiana.

H. <u>Facilities Ownership</u>. The FCC has recognized that TracFone is a non-facilities based reseller and has granted TracFone forbearance from the requirement that ETCs provide Lifeline-supported services at least in part over its own facilities. These requirements are codified at Section 214(e)(1)(A) of the Act and at Section 54.201(i) of the FCC's Rules. The Commission notes TracFone has taken the necessary steps to obtain forbearance from the FCC regarding the facilities requirement and to demonstrate its compliance with the conditions of its Forbearance Order.

I. <u>Deployment of or Improvements to Indiana Network Facilities</u>. In prior ETC Orders, the Commission has noted the importance of facilities-ownership in the context of our public interest inquiry. As a reseller, TracFone will not be deploying or improving Indiana network facilities, nor will TracFone receive funds from the USF high cost fund for doing so. However, TracFone has served Indiana prepaid wireless customers for over ten years and contributes to a demand for network facilities from its underlying carriers. In addition, as Mr. Keen testified, TracFone has had a long-standing relationship with Brightpoint, a large Indiana employer.

J. <u>Public Comments Regarding ETC Designation</u>. Additional evidence presented by the OUCC further supports a finding that the granting of TracFone's limited, Lifeline-only ETC designation request will serve the public interest. Along with its prefiled testimony, the OUCC filed and offered into evidence at the Hearing copies of public comments received by the OUCC. All but a few public comments received strongly supported TracFone's limited, Lifeline-only ETC designation request for Indiana.

Based on the evidence presented in this case, the Commission finds TracFone has met all applicable ETC eligibility requirements and the public interest supports granting TracFone ETC status for the limited purpose of offering Lifeline service in Indiana. TracFone offers several plans with unique features. Making TracFone's Lifeline service available to eligible customers will increase customer choice and, with measures in place to prevent misuse of the Lifeline program, will not adversely affect the USF. TracFone has demonstrated that it has the ability through the networks of the underlying carriers, whose service TracFone resells, to satisfy the obligation to serve the designated service areas within a reasonable time frame. Accordingly, the Commission finds TracFone's Petition should be granted pursuant to the Settlement Agreement, as modified by the Commission and discussed below, and TracFone should be subject to the regulatory oversight and prospective reporting requirements also set forth below.

B.     _Settlement Agreement._ It is clear that the parties have expended significant time and effort to resolve their differences and to support the Settlement Agreement, a copy of which is attached to this Order and incorporated by reference, as filed with the Commission. In light of the evidence of record, we find the Settlement Agreement to be reasonable and in the public interest, and will adopt it as part of this Order. However, while the Settlement Agreement contained reasonable reporting requirements, we find that it is necessary to modify the Settlement Agreement to set reasonable and fair standards consistent with the Commission's Order in _Virgin Mobile USA, L.C._, Cause No. 41052 ETC 55, 2010 Ind. PUC LEXIS 387, (IURC Nov. 10, 2010). Thus, the Commission places the following conditions on TracFone's designation as an ETC:

1.     TracFone shall comply with the conditions of its FCC Forbearance Order and its Compliance Plan in Indiana. TracFone shall notify the Commission if terms of its Forbearance Order or Compliance Plan are modified.

2.     TracFone shall deactivate a SafeLink Wireless® account if the customer has no usage for ninety consecutive days. No fewer than eight business days before deactivation, TracFone shall send the customer a written notice by mail about the potential deactivation and ways to avoid unwanted deactivation. The customer shall have a thirty-day grace period from the deactivation date to reactivate the SafeLink Wireless® account and restore the minutes accrued during the ninety-day non-usage period and the thirty-day grace period.

3.     TracFone shall offer Lifeline-eligible customers at least one plan with a minimum of 250 free minutes per month and a charge of not more than $0.10 for each additional minute and each text message. TracFone shall file a tariff of its proposed offerings prior to initiating Lifeline service in Indiana and notify the Commission in the form of a new tariff if any terms, conditions, or allocation of free minutes changes.

4.     TracFone shall provide the Commission with a copy of its annual Lifeline Verification survey results that it files with the Universal Service Administrative Company by August 31st of each year.

5.     To safeguard against misuse of the Lifeline service plan, TracFone shall deal directly with the customer and require each customer to self-certify under penalty of perjury that the customer is the only member of a household receiving the Lifeline discount, that the customer did not receive the Lifeline discount for any other phone, and that the customer is eligible for the Lifeline discount either based upon participation in one of the qualifying low-income programs or based upon income. Lifeline customers who certify eligibility based upon income or participation in a qualifying program shall provide copies of documentation demonstrating their eligibility.

6.     TracFone shall notify each Lifeline customer on an annual basis, and request that the customer confirm his or her continued eligibility for Lifeline services, by requiring that the customer self-certify he or she continues to be eligible for the discount based upon the customer's income or participation in a qualifying low-income program. Such verification will be required in order for the consumer to continue to purchase prepaid airtime at the discounted rate.

7.    In the event the ILAP becomes law, TracFone shall seek Commission approval of any new Lifeline offering subject to the additional Indiana discount prior to participation in ILAP.

8.    TracFone shall contribute to the InTrac Fund on a monthly basis in an amount equal to the Commission-approved InTrac monthly surcharge (currently $0.03) multiplied by the number of active TracFone accounts during each month, consistent with Cause No. 39880 and Indiana Code ch. 8-1-2.8.

9.    TracFone shall continue to pay applicable fees, such as the public utility fee, pursuant to Indiana Code ch. 8-1-6, the IUSF fee pursuant to the Commission's Final Order in Cause 42144, applicable wireless emergency E911 fee pursuant to Indiana Code § 36-8-16.5-30.5, and any other applicable fees.

10.    TracFone shall revise its designated service area to omit study areas of rural telephone companies that cannot be completely served by TracFone's virtual network subject to approval by Commission staff prior to providing Lifeline service in Indiana.

11.    TracFone shall submit a compliance plan indicating how it will implement the above conditions prior to offering services in Indiana. The Commission shall have thirty days to approve or notify TracFone that additional modifications of the compliance plan are necessary.

Finally, the parties have agreed that the Settlement Agreement should not be used as precedent in any other proceeding or for any other purpose, except to the extent necessary to implement or enforce its terms. However, with regard to future citation of the Settlement Agreement, we find that our approval herein should be construed in a manner consistent with our findings in *Richmond Power & Light*, Cause No. 40434, (IURC Mar. 19, 1997).

7.    **Regulatory Oversight.** This Commission has previously recognized certain specific regulatory requirements that competitive wireless ETC applicants must satisfy in order to secure and maintain their ETC status in Indiana. *See Nextel*, Cause No. 41052-ETC-43 (IURC Mar. 17, 2004), at 28-30; *Cinergy Metronet*, Cause No. 41052-ETC-50 (IURC Jan. 31, 2007) at 26. Such regulatory requirements stem from the FCC's mandate that state commissions certify that federal USF support is being used "only for the provision, maintenance and upgrading of facilities and services for which the support is intended," consistent with 47 U.S.C. § 254(e). Absent such a certification, carriers will not receive such support. 47 C.F.R. § 54.313. In order for the Commission to satisfy its ETC certification requirements to the FCC, we require ETC applicants to file a tariff with the Commission and track their USF expenditures. *See Universal Service Investigation*, Cause No. 40785 (IURC Nov. 5, 1997).

The record includes TracFone's Informational Lifeline tariff it will file with the Commission's Communications Division for review prior to offering its Lifeline service in Indiana. TracFone also stated that it is familiar with and agrees to comply with USF tracking requirements the Commission previously established to ensure that funds received from USF for Indiana are devoted to furthering universal service goals within TracFone's Indiana ETC designated service area. Accordingly, the Commission finds TracFone should file with

Commission's Communication Division its Information Lifeline tariff for review prior to making its Lifeline offerings available to eligible customers in Indiana.

**8.** **Prospective ETC Reporting Requirements.** Finally, the Commission finds TracFone should be required to meet the prospective reporting requirements established by the 2005 FCC ETC Order to the extent applicable, given TracFone's limited designation as an ETC for Lifeline services only. Thus, TracFone should submit the following information on an annual basis:

   *A.*  *Service Outages.* Detailed information on any outage that (i) lasts at least thirty minutes, (ii) occurs in TracFone's Indiana service territory, (iii) affects facilities that TracFone utilizes, and (iv) potentially affects either (a) at least ten percent of the end users served in a designated service area, or (b) a 911 special facility (as defined in subsection (e) of Section 4.5 of the Outage Reporting Order. *See* In the Matter of New Part 4 in Commission's Rules Concerning Disruptions to Communications Services, ET Docket 04-35, Released August 14, 2004). An "outage" means a significant degradation in the ability of an end user to establish and maintain a channel of communications as a result of failure or degradation in the performance of a communications provider's network. The detailed information reported on an outage must include: (1) the date and time of onset of the outage; (2) a brief description of the outage and its resolution; (3) the particular services affected; (4) the geographic areas affected by the outage; (5) steps taken to prevent a similar situation in the future; and (6) the number of customers affected. As noted above, TracFone resells the service of other facilities based providers. In order to avoid duplicative reporting, we find that TracFone may join in, or incorporate by reference in TracFone's own reporting, any such outage reports submitted by an underlying carrier whose service TracFone resells.

   *B.*  *Unfilled Service Requests.* The number of requests for service from potential customers within Indiana that were unfulfilled during the past year (including details regarding how TracFone attempted to provide service to those potential customers);

   *C.*  *Service Complaints.* The number of complaints per 1,000 handsets;

   *D.*  *Service Quality.* Certification that TracFone is complying with applicable service quality standards and consumer protection rules, e.g., the CTIA Consumer Code for Wireless Service;

   *E.*  *Functionality in Emergencies.* Certification that TracFone is able to function in emergency situations, and TracFone may satisfy this requirement by reference to such certifications from underlying carriers whose service TracFone resells;

   *F.*  *Local Usage.* Certification that TracFone offers a local usage plan comparable to that offered by the ILEC in the relevant service areas; and

   *G.*  *Equal Access to Long-Distance Carriers.* Certification that TracFone acknowledges that the Commission may require it to provide equal access to long distance carriers in the event that no other eligible telecommunications carrier is providing equal access within TracFone's Indiana ETC designated service area.

Unless otherwise directed by the Commission, TracFone's compliance filings should be filed under the Commission's annual ETC certification proceeding, docketed as Cause No. 42067, commencing with the report due to be filed with the Commission on August 31st.

**IT IS THEREFORE ORDERED BY THE INDIANA UTILITY REGULATORY COMMISSION THAT:**

1.     TracFone's application for designation as an Eligible Telecommunications Carrier for the limited purpose of participation in the Universal Service Fund's Lifeline program, for the service areas to be identified in Petitioner's filing to be submitted in accordance with Paragraph 6.A.4., shall be and hereby is granted.

2.     TracFone is hereby authorized to apply for and receive Universal Service Lifeline support pursuant to 47 U.S.C. § 254 solely for the purpose of providing Lifeline service to eligible customers located in TracFone's designated Indiana ETC service areas, subject to TracFone's continued compliance with the terms and conditions of the underlying Settlement Agreement, the conditions of this Order, other applicable Commission Orders and other applicable laws.

3.     The Stipulation and Settlement Agreement executed between Tracfone and the OUCC is approved as modified herein.

4.     This Order shall be effective on and after the date of its approval.

**ATTERHOLT, BENNETT, MAYS AND ZIEGNER CONCUR; LANDIS ABSENT:**

**APPROVED:**    JUN 2 9 2011

**I hereby certify that the above is a true**
**and correct copy of the Order as approved.**

*Brenda A. Howe*

**Brenda A. Howe,**
**Secretary to the Commission**

20

This Settlement Agreement with regard to the issues in Cause No. 41052-ETC-54 pending before the Indiana Utility Regulatory Commission ("Commission") is entered into and effective this 12th day of October, 2010, by and between TracFone Wireless, Inc. ("TracFone") and the Indiana Office of Utility Consumer Counselor ("OUCC") (hereinafter collectively "Settling Parties").

WHEREAS, on June 22, 2009, TracFone filed its Verified Petition for Designation as an Eligible Telecommunications Carrier ("ETC") in the State of Indiana for the limited purpose of offering Lifeline service to qualified households, which Petition is pending before the Indiana Utility Regulatory Commission ("Commission") as Cause No. 41052-ETC-54; and

WHEREAS, meetings and discussions have taken place between the Settling Parties in an effort to reach a negotiated agreement concerning the issues presented in Cause No. 41052-ETC-54.

NOW, THEREFORE, in consideration of the mutual obligations and promises set forth herein, the Settling Parties stipulate and agree as follows:

1.    **Expanded Lifeline Service Offerings.**    TracFone has offered to provide an expanded Lifeline service offering in Indiana with three different Lifeline Service Plans, described below, to be provided free of charge to eligible Indiana customers who qualify to receive low-income assistance under the federal Universal Service program.    The proposed Settlement Agreement, if approved, would allow TracFone's Indiana Lifeline customers to choose between the following three (3) TracFone Lifeline Service Plans:

EXHIBIT A

**LIFELINE SERVICE PLAN A** includes the following services and features:

a) A TracFone wireless handset provided free of charge;

b) Sixty-eight (68) minutes of airtime per month, provided free of charge;

c) Unused minutes carry-over for use in subsequent months;

d) Additional minutes may be purchased at a rate not to exceed ten cents ($0.10) per minute;

e) Each text message is charged at the rate of one-third (1/3) of a minute of airtime; and

f) Airtime minutes may be used for local or long distance calling to destinations throughout the United States, and international calling to over sixty (60) destinations specified by TracFone.

**LIFELINE SERVICE PLAN B** includes the following services and features:

a) A TracFone wireless handset provided free of charge;

b) One hundred twenty five (125) minutes of airtime per month, provided free of charge;

c) Unused minutes carry over for use in subsequent months;

d) Additional minutes may be purchased at a rate not to exceed ten cents ($0.10) per minute;

e) Each text message is charged at the rate of one (1) minute of airtime; and

f) Airtime minutes may be used for local calling and long distance calling to destinations throughout the United States.

**LIFELINE SERVICE PLAN C** includes the following services and features:

a) A TracFone wireless handset provided free of charge;

b) Two hundred fifty (250) minutes of airtime per month, free of charge;

c) Unused minutes do NOT carry over for use in subsequent months;

EXHIBIT A

d) Additional minutes may be purchased at a rate not to exceed ten cents ($0.10) per minute;

e) Each text message is charged at the rate of one (1) minute of airtime; and

f) Airtime minutes may be used for local calling and long distance calling to destinations throughout the United States.

2. **Additional Commitments by TracFone.** TracFone also agrees to the following provisions with regard to its provision of Lifeline service in Indiana:

a) Tracfone agrees to ensure that Indiana Lifeline customers are able to contact TracFone customer service by dialing the 611 dialing code on their handsets without incurring any charges for such calls and without reducing or otherwise limiting their remaining airtime;

b) TracFone may in the future offer additional minutes under any of the three Lifeline Service Plans described above, provided the retail rate charged for such additional airtime not exceed ten cents ($0.10) per minute;

c) TracFone acknowledges that it is not eligible to receive and will not seek high cost support under either the Indiana Universal Service Fund or the Federal Universal Service Program; and

d) Although not a signatory to the CTIA Consumer Code, TracFone agrees to comply with all applicable requirements for service provided to its Indiana Lifeline service customers.

3. **Additional Quarterly Confidential Reporting.** In addition to standard ETC reporting requirements the Commission determines to be applicable to TracFone, as the first Indiana ETC that is a pure reseller of prepaid-only wireless service, TracFone will submit confidential quarterly reports with the following information to the OUCC and to the Director of the Indiana Utility Regulatory Commission's Communications Division (or another member of the Commission's staff identified by the Commission as the intended recipient):

a) The total number of active TracFone Lifeline service customers in Indiana as of the beginning of the last calendar quarter;

b) The total number of new TracFone Lifeline service customers in Indiana added during the last calendar quarter;

3

c) The total number of inactive TracFone Lifeline service customers in Indiana whose service was reactivated during the last calendar quarter;

d) The total number of TracFone Lifeline service customers in Indiana whose TracFone service was deactivated during the last calendar quarter;

e) The number of active TracFone Lifeline service customers in Indiana at the end of the last calendar quarter (add Lines a through c above, then subtract Line d ); and

f) The total revenue TracFone claimed from the Federal Universal Service Fund (USF) for providing Lifeline service in Indiana during the last calendar quarter.

4. **Additional Annual Confidential Reporting.** In addition to standard ETC reporting requirements the Commission determines to be applicable to TracFone, as the first Indiana ETC that is a pure reseller of prepaid-only wireless service, TracFone also agrees that, starting in 2012, by February 15 of each calendar year, TracFone will submit to the OUCC and to the Director of the Indiana Utility Regulatory Commission's Communications Division (or another member of the Commission's staff identified by the Commission as the intended recipient), on a confidential basis, annual reports containing the following information:

a) Total number of TracFone Lifeline service customers in Indiana receiving Lifeline service from TracFone for one month or more during the last calendar year;

b) Total number of TracFone Lifeline service customers in Indiana whose service was deactivated by TracFone during the last calendar year due to non-use or cancellation (e.g., a report submitted by February 15, 2012, will cover data from January 1, 2011 through December 31, 2011);

c) TracFone's total annual expenditures for promoting or advertising Lifeline service in Indiana during the last calendar year, detailed by category of promotional activity (e.g., print media, broadcast media, direct mailings, etc.)

5. **OUCC Support and Cooperation.** Based on the program modifications, additional commitments and reporting promised by TracFone in paragraphs 1, 2, 3 and 4 above,

EXHIBIT A

and on the analysis and investigation by the OUCC regarding TracFone's Petition, the OUCC agrees to support TracFone's ETC Application.

6. **Testimony Supporting Proposed Settlement and ETC Petition.** The Parties agree to exchange drafts of the testimony and exhibits they each intend to prefile to support the proposed settlement and TracFone's ETC Petition. The Parties will exercise good faith in attempting to promptly reach an agreement regarding reasonable changes to draft settlement testimony, if changes are requested by the other Settling Party. If agreement cannot be reached, either party may revoke this Agreement by written notice to the other, and the Parties will request a new procedural schedule to accommodate the preparation, filing and presentation of litigation testimony to the Commission at a public evidentiary hearing. However, if agreement is reached concerning the language included in testimony filed in support of the proposed settlement, the Parties agree not to object to the offer of such testimony into evidence and to waive cross-examination of each other's witnesses at hearing.

7. **TracFone's Proposed Order.** Attached hereto as Exhibit A is a form of Proposed Order which the Petitioner plans to submit to the Commission to adopt as the Final Order in this Sub-Docket. The OUCC has reviewed the attached draft Proposed Order and agrees not to object to the terms thereof if the current language is not materially changed before it is presented to the Commission for approval.

8. **TracFone's Proposed Use of Informational Lifeline Tariff.** Following receipt of an Order approving TracFone's ETC designation request, TracFone shall promptly submit to the Commission's Communications Division (and provide a copy to the OUCC) of TracFone's proposed Informational Tariff for its Indiana Lifeline Service Plans consistent with the

5

Commission's Order. TracFone also shall timely submit to the Commission's Communications Division revisions to TracFone's Informational Tariff (and serve copies on the OUCC), reflecting any changes TracFone proposed to make in its Indiana Lifeline service or the terms and conditions for such service, consistent with the Commission's Order.

9. **Cooperation and Support.** The parties agree to cooperate in: (i) providing any additional information requested by the Commission for purposes of ruling on TracFone's Petition by the October 27, 2010 evidentiary hearing on this proposed Settlement Agreement; and (ii) closing the record and completing necessary post-hearing filing(s) as expeditiously as possible at the close of the hearing.

10. **Headings.** All headings are inserted for convenience only and are not intended to affect the meaning or interpretation of this agreement or any provision thereof.

11. **Testimony and Exhibits Offered at Hearing.** If the Commission does not approve the proposed Settlement Agreement as submitted and grant TracFone's ETC Petition with a final order materially consistent with Attachment A, and without substantive changes not agreed upon in writing by each of the Settling Parties, then this Settlement Agreement shall be deemed null and void and withdrawn, unless otherwise agreed by the Petitioner and the OUCC.

12. **Public Statements.** The Settling Parties shall consult with each other and, to the extent possible, agree on the form, wording and timing of public/media announcements, if any, used to announce the terms of this Settlement Agreement.

13. **Effect and Use of Settlement Agreement.** The communications and discussions which have produced this Agreement have been conducted on the explicit understanding that they are, or relate to, offers of settlement and shall be privileged and confidential, shall be

6

EXHIBIT A

without prejudice to the position of any Settling Party, and are not to be used in any manner in connection with any other proceeding or otherwise. Unless elsewhere explicitly provided in this agreement, (a) the making of this agreement, (b) the provisions of this agreement, (c) the execution of any of this agreement or any other documents or pleadings required to effectuate its provisions, and (d) the entry by the Commission of an order granting TracFone's Petition or approving this agreement, shall not be referred to or cited as precedent, except if and as, necessary to enforce the terms of this Agreement and any final order issued by the Commission in Cause No. 41052-ETC-54. If this Settlement Agreement is not approved by the Commission without any substantive change not approved by the Settling Parties, the Settlement Agreement: (i) shall not constitute an admission by any Settling Party in this or any other legal proceedings; and (ii) shall not establish any principles or precedent applicable to the Settling Parties or to other parties raising similar issues in other Commission proceedings.

This agreement is entered into by the Settling Parties solely as the result of compromise reached in the settlement process and, except as provided herein, is without prejudice to and shall not constitute a waiver of any position that any Settling Party may take with respect to any or all of the matters resolved by this agreement, in any other, future proceeding. The Settling Parties shall not appeal or seek a stay of any final or related orders to the extent the orders implement the provisions of this Settlement Agreement. The Settling Parties shall also support this Settlement Agreement in the event of any subsequent appeal or request for a stay by someone other than a party to this proceeding, recognizing that OUCC participation in such efforts may be limited by and is subject to the continued availability of resources required to support the proposed Settlement Agreement in further appeals.

EXHIBIT A

**14.** **Authorized Signatories.** The Settling Parties, and the persons signing this agreement on their behalf, represent and agree that they are fully authorized to execute this Agreement and bind the Settling Parties to the terms of this Agreement.

**TRACFONE WIRELESS, INC.**

**INDIANA OFFICE OF UTILITY CONSUMER COUNSELOR**

By: _____

By: _____

F.J. Pollak, President

A. David Stippler, Utility Consumer Counselor

Executed on: _____

Executed on: _____

8

EXHIBIT A