UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| VIRGIN MOBILE USA, L.P.,<br><br>                Plaintiff,<br>    v.<br><br>MEMBERS OF THE INDIANA STATEWIDE 911 BOARD IN THEIR OFFICIAL CAPACITY,<br><br>                Defendants. | CIVIL ACTION NO. 15-cv-1105-SEB-DKL |

## FIRST AMENDED COMPLAINT

Plaintiff Virgin Mobile USA, L.P. ("Virgin Mobile" or "Plaintiff"), through undersigned counsel, brings this action against Defendants the Members of the Indiana Statewide 911 Board in their Official Capacity (collectively, "Defendants"), and in support thereof alleges as follows:

## INTRODUCTION

1. This action is brought in order to challenge Indiana's unlawful adoption of Public Law 157-2015, which purports to amend Section 36-8-16.6-11 of the Indiana Enhanced Wireless Prepaid Wireless Telecommunications Service Charge Act in order to impose retroactive and prospective surcharges on the providers of Lifeline telephone service to needy Indiana citizens ("Amended Section 11"). These fees were imposed by the State's legislature with the illegal intent of dissuading Lifeline service providers from providing a much-needed, federally-mandated service in Indiana. If the current version of Section 11 is allowed to stand, Virgin Mobile's Lifeline service will be economically unsustainable and could be driven from Indiana's market, thereby harming both Virgin Mobile and its low-income customers.

2. Virgin Mobile seeks declaratory and injunctive relief, an accounting, and other relief as this Court finds appropriate in order to invalidate Amended Section 11 as unlawful, unduly burdensome, and contrary to the intent of the United States Congress in mandating and the Federal Communications Commission ("FCC") in enforcing the Lifeline program.

## THE PARTIES

3. Plaintiff Virgin Mobile is a wholly-owned subsidiary of Sprint Corporation, a corporation lawfully organized pursuant to the laws of the State of Delaware. Virgin Mobile, a national telecommunications operator, operates as an Eligible Telecommunications Carrier ("ETC") in Indiana and other jurisdictions pursuant to section 214(e)(2) of the Communications Act of 1934 (the "Communications Act").

4. Defendant Members of the Indiana Statewide 911 Board in Their Official Capacity are the members of Defendant Indiana Statewide 911 Board in their official capacity. The Indiana Statewide 911 Board is a quasi state government agency established by IC 36 8 16.7, which has statewide jurisdiction over 911 services.

## JURISDICTION AND VENUE

5. This Court has Jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, 2201 and 2202. Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) and (d).

## HISTORY OF THE LIFELINE PROGRAM

6. The Communications Act of 1934 outlined the concept of universal service, which envisioned that all people of the United States, so far as possible, retain access to world-wide wire and radio communications services with adequate facilities at reasonable charges. In 1996, Congress passed the Telecommunications Act, which directed the FCC to recommend

changes to the FCC's regulations and to promulgate rules in order to implement the universal service mandate.

7. The federal Lifeline assistance program ("Lifeline" or the "Program") is a universal service program created by the FCC in order to fulfill Congress's mandate of ensuring that all Americans have access to communications services. The intent of Lifeline is to ensure that all Americans be able to reap the benefits, opportunities and security that reliable phone service brings, including: being able to connect to friends and family, contact emergency services and find and apply for jobs.

8. The Lifeline program assists low-income customers by helping to pay for monthly telephone charges. Through the Program, qualifying low-income consumers are eligible to receive a monthly discount on their phone service, and certain providers – typically prepaid wireless providers such as Virgin Mobile – may allow qualifying consumers to obtain free service. Under the Program, Lifeline eligible customers qualify to receive a $9.25 monthly subsidy from the federal Universal Service Fund ("USF" or the "Fund"), which the ETC applies to the cost of providing services. An ETC may directly pass this subsidy on to the customer in the form of free or low-cost service. The ETC must certify monthly that it passes through the entire $9.25 in subsidies it receives for participating in the Lifeline program to its customers. An ETC can submit for reimbursement from the Fund for each of its customers who are enrolled in the Lifeline program. Each ETC is required to re-certify its subscribers each year.

9. Originally, the Lifeline benefit was only available for traditional landline phone service. In 2005, the Commission extended Lifeline benefits to pre-paid wireless service plans. Currently, the Lifeline program is available to eligible low-income Americans in every state, territory, commonwealth and on Tribal lands. Throughout the country, there are nearly 2,000

3

telecommunications companies that provide Lifeline services. To date, the Lifeline program has provided free or low-cost phone service for well over 100 million low-income Americans.

10. In order for a potential subscriber to qualify for a Lifeline program in Indiana, she must either: (1) earn an income that is at or below 135% of the Federal Poverty Guidelines, or (2) participate in one of the following federal assistance programs: Medicaid, Supplemental Nutrition Assistance Program ("SNAP"), Supplemental Security Income ("SSI"); Federal Public House Assistance ("Section 8"); Low-Income Home Energy Assistance Program ("LIHEAP"); Temporary Assistance to Needy Families ("TANF"); the National School Lunch Program's Free Lunch Program; Bureau of Indian Affairs General Assistance; Tribally-Administered Temporary Assistance for Needy Families ("TTANF"); Food Distribution Program on Indian Reservations ("FDPIR"); Head Start (if income eligibility criteria are met); or an enumerated state assistance program.

11. Approximately half a million Indiana residents qualify for the Lifeline benefit. Out of this number, there are currently only 174,356 Indianans enrolled in a Lifeline service, less than half of the eligible population.

## **VIRGIN MOBILE'S LIFELINE SERVICE**

12. "Assurance Wireless Brought To You By Virgin Mobile" ("Assurance"), a Lifeline service offered by Virgin Mobile, provides free and low-cost cellular phone service to low-income Americans. Assurance service provides Assurance subscribers with the same features and functionality that all other Virgin Mobile customers enjoy, with the crucial distinction that Assurance subscribers receive at least 250 "anytime" prepaid minutes and unlimited text messages each month free of charge. Assurance subscribers also receive, at no

additional charge, voice mail, caller I.D., and call waiting. Virgin Mobile does not assess any taxes and fees on its Assurance subscribers for this plan.

13. Assurance subscribers are able to purchase additional minutes for $0.10 per minute. Subscribers may also choose to "Top-Up" by, for example, purchasing an additional 250 minutes per month for $5.00, or by purchasing unlimited minutes for a month for $30.00.

14. Assurance does not require a credit-check or a long-term service contract as a prerequisite for obtaining Assurance service. Though Assurance service is often referred to as a "prepaid" service, when the subscriber enrolls in Assurance's plan, the components of which are free of charge to the subscriber, the Assurance subscriber does not pay for the plan and no "retail transaction" takes place. Assurance does not and has never issued monthly bills to its customers.

15. Unless they choose to "Top-Up" by purchasing additional minutes or by exceeding their allocation of "anytime" prepaid minutes, Assurance customers are never charged for their Assurance cellular phone service.

16. A majority of Assurance subscribers do not pay out-of-pocket for their service. Most have never "Topped-Up," or added money to, their Assurance accounts to purchase additional services. Of the few who have chosen to "Top-Up," the average amount added to a subscriber account in a single month is minimal. Since Virgin Mobile does not require a credit check or payment information to enroll in the Assurance Lifeline plan, Virgin Mobile does not have a credit card on file for most of its Lifeline customers.

17. A majority of Assurance subscribers are enrolled in a public assistance program. Almost all of those subscribers receive food stamps or Medicaid support. The majority of Assurance subscribers have household incomes significantly below the federal poverty line.

18. Many Assurance subscribers had never owned a cell-phone before receiving their free Assurance phone service due to financial constraints or poor credit history. Before enrolling in an Assurance Wireless Lifeline plan, many subscribers had gone over a year without phone service.

19. For almost all of Assurance subscribers, their Lifeline wireless phone is the only phone in their household. A majority of Assurance subscribers use their Assurance phone to pursue employment or remain employed.

20. Virgin Mobile currently provides free or low-cost service to over two million Assurance subscribers nationwide. Overall, Assurance subscribers are very satisfied with the quality of service they receive, as over three-fourths of Assurance subscribers say their Assurance Wireless service is better than expected.

**VIRGIN MOBILE IS APPROVED AS AN INDIANA LIFELINE PROVIDER**

21. Pursuant to FCC requirements, Virgin Mobile must submit an ETC application for each state in which it wishes to provide Lifeline services. In compliance with these requirements, Virgin Mobile submitted its ETC application to provide Lifeline services to low-income Indiana citizens to the Indiana Utility Regulatory Commission (the "Commission") in January of 2010. On November 10, 2010, the Commission granted Virgin Mobile's ETC application.

22. In granting Virgin Mobile ETC status, the Commission concluded that allowing Virgin Mobile to enter the Lifeline market in Indiana would increase customer choice, promote competition and expand the availability of wireless services to qualifying Indiana customers, leading to lower prices.

23. As of April 2015, Virgin Mobile provided Lifeline service to over 53,000 Assurance Lifeline subscribers in Indiana.

**INDIANA ENACTS LEGISLATION TARGETING LIFELINE PROVIDERS**

24. Pursuant to IC 36-8-16.7-29, Indiana law currently imposes a monthly 911 surcharge on wireless cellphone subscribers in order to recover the cost of establishing a 911 emergency services telephone system. This surcharge is levied on wireless cellphone subscribers (not wireless cellphone providers). Indiana law allows wireless cellphone providers to collect this fee on behalf of the State, and allows wireless cellphone providers to retain one percent of all fees they collect to cover the costs of collection and remission to the Indiana Statewide 911 Board. Indiana law also currently imposes a 911 surcharge on prepaid wireless subscribers who "Top-Up" by purchasing prepaid wireless cellphone cards on an ad-hoc basis. This fee on prepaid subscribers is collected from the subscriber at the point of sale at the time the retail transaction occurs.

25. Public Law 157-2015 was adopted by the Indiana legislature on May 4, 2015. In pertinent part, Amended Section 11 of Public Law 157-2015 amends IC 36-8-16.6-11 of the Indiana Enhanced Wireless Prepaid Wireless Telecommunications Service Charge Act to impose retroactive and prospective surcharges on the providers of Lifeline phone service to economically disadvantaged households in order to recover the cost of establishing a 911 emergency services telephone system. These new surcharges would be imposed in addition to (and not instead of) the two 911 surcharges already levied on wireless cellphone subscribers.

26. Amended Section 11 states, in pertinent part, that a Lifeline service provider

> shall pay to the board . . . Not later than August 1, 2015, a one (1) time charge equal to the product of the following factors: (A) The [one dollar] enhanced prepaid wireless charge established under subsection (a). (B) The number of unique end users for which the [Lifeline] provider received reimbursement from the universal service fund during the immediately preceding month. (C) The number of months under the current service agreement between each end user described in clause (B) and the [Lifeline] provider for which the provider has received reimbursement from the universal service fund before August 1, 2015.

Therefore, as of August 1, 2015, Amended Section 11 will retroactively charge Virgin Mobile and other Lifeline phone providers a fee for every Indiana Lifeline customer for every month going back to the initial month of each Lifeline customer's current service agreement.

27. As of September 1, 2015, Amended Section 11 will also impose a monthly recurring charge of $1.00 on Virgin Mobile for each subscriber on whose behalf it receives $9.25 in federal subsidy from the Universal Service Fund. This new $1.00 fee is not imposed on non-Lifeline communications carriers.

28. Pursuant to federal regulations, Virgin Mobile must certify monthly that it passes through the entire $9.25 in subsidies it receives for participating in the Lifeline program to Virgin Mobile customers in the form of service. Therefore, the additional $1.00 fee per subscriber would necessarily be borne by Virgin Mobile unless and until a mechanism could be found in order to collect the additional fee from the customer.

29. If the current revisions to Amended Section 11 go into effect as intended, Virgin Mobile will be forced to pay substantial fees for each of its Indiana-based Lifeline customers, making it economically unsustainable for Virgin Mobile to provide Lifeline services in the State of Indiana.

30. Because Virgin Mobile does not require its Assurance subscribers to provide any payment information in order to obtain the Assurance service, Amended Section 11 will place a disproportionate burden on Virgin Mobile, as it will have no effective way to recover these new fees from Assurance subscribers short of a costly reconfiguration of its intake and billing process. Furthermore, any such reconfiguration, if it was undertaken, would force Virgin Mobile to charge fees to all its Assurance customers, whether or not they had paid the fee in connection with a retail "Top-Up" transaction. This modification to the Indiana Assurance program would doubtless cause a large portion of Indiana Assurance subscribers to drop out of the Assurance program.

31. If Amended Section 11 is allowed to go forward, and Virgin Mobile will not be able to pass on the new Lifeline 911 fee imposed by Amended Section 11 to its subscribers, making it economically unsustainable for Virgin Mobile to provide Lifeline services. This will result in a decrease in competition and consumer choice, and may widen the gap of underserved customers in Indiana, whose Lifeline-eligible population is already grossly underserved.

32. Upon information and belief, other Lifeline carriers in Indiana may also decide that Amended Section 11 makes it no longer financially feasible to operate Lifeline programs in Indiana.

33. If Amended Section 11 is enforced there is a real risk that customers who would otherwise have been eligible for Lifeline benefits pursuant to the mandates of Congress and the regulations of the FCC, will have no method of obtaining those benefits. Amended Section 11 will thereby deprive some of the poorest households in Indiana of telephone service.

## COUNT I

### AMENDED SECTION 11 IS PREEMPTED BY FEDERAL LAW
### (AGAINST ALL DEFENDANTS)

34. Virgin Mobile repeats and incorporates paragraphs 1 through 34 as if set forth fully herein.

35. Amended Section 11 substantially and illegally interferes with the intention of Congress and the FCC in establishing the Lifeline program for economically disadvantaged households. The express intent of the Lifeline program is to provide communications services at reasonable charges to low-income households. By levying both a prospective and a retrospective $1.00 surcharge on a Lifeline Provider for each of their Lifeline subscribers, Amended Section 11 strives to undermine the intent of Congress by making this mandate difficult if not impossible.

36. Amended Section 11, if allowed to go forward, will render the Lifeline program financially unfeasible in the State of Indiana, creating an obstacle to the accomplishment and execution of the full objectives of Congress. Amended Section 11 is therefore invalid pursuant to the Supremacy Clause of the United States Constitution, Art. VI, Cl. 2.

37. Accordingly, Virgin Mobile is entitled to declaratory and injunctive relief on this count as described in its prayer for relief.

### COUNT II

### AMENDED SECTION 11 VIOLATES THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### (AGAINST ALL DEFENDANTS)

38. Virgin Mobile repeats and incorporates paragraphs 1 through 38 as if set forth fully herein.

39. The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S CONST.

amend. XIV, § 1. By intentionally singling out only Lifeline providers to pay a 911 service fee, where all non-Lifeline wireless cellphone providers do not have to pay such a fee, Amended Section 11 discriminates against Virgin Mobile and other Lifeline providers, does not satisfy rational basis review, and is therefore violative of the Fourteenth Amendment's Equal Protection Clause.

40. Enforcement of Amended Section 11 would require Virgin Mobile to make a difficult and unduly harsh choice: (i) purge its business model of all Lifeline subscribers in Indiana to avoid the 911 fee liability; or (ii) endure the unlawful change in law. Regardless of the path Virgin Mobile or other Lifeline Providers will take, Virgin Mobile and similarly situated prepaid wireless Lifeline Providers will face a substantial financial burden negatively impacting their ability to provide Lifeline service in Indiana. This singling out of Lifeline providers is violative of the Equal Protection Clause, as it requires only Lifeline Providers (and not other telecommunication providers) to expend greater internal financial and human resources to ensure its retroactive and prospective compliance.

41. Accordingly, Virgin Mobile is entitled to declaratory and injunctive relief on this count as described in its prayer for relief.

## COUNT III

### ACCOUNTING
### (AGAINST ALL DEFENDANTS)

42. Virgin Mobile repeats and incorporates paragraphs 1 through 42 as if set forth fully herein.

43. IC 36-8-16.7-29 provides that Indiana's statewide 911 fund is established to recover the cost of establishing a 911 emergency services telephone system. Amended Section

11, if allowed to become effective, would impose new 911 service fees on Virgin Mobile and other Lifeline providers. The new fees imposed on Virgin Mobile and other Lifeline providers would be needless if the 911 emergency services telephone system would have a surplus.

44. Furthermore, pursuant to IC 36-8-16.7-29, the State would not be allowed to use such funds for any purpose other than establishing and maintaining Indiana's 911 emergency services telephone system.

45. Accordingly, as described in its prayer for relief, Virgin Mobile is entitled to the equitable relief of an accounting, in order to discover whether the new 911 fees are necessary for the maintenance of Indiana's 911 emergency telephone system.

## PRAYER FOR RELIEF

WHEREFORE, Virgin Mobile respectfully requests that this Court grant it the following relief:

(1) Declare that Amended Section 11 on the issues set forth in Counts I-II of this Complaint violates federal law;

(2) Permanently enjoin Defendants from enforcing any provision of Amended Section 11 or any other law inconsistent with the relief sought on Counts I-II;

(3) That Defendants be ordered by a decree of this Court to fully and completely account for all sums currently held by, and all sums necessary for the maintenance of, the State of Indiana's 911 emergency telephone system.

(4) Award Virgin Mobile such other and further relief as the Court deems just and proper.

DATED: September 29, 2015            Respectfully submitted,

    /s/ Henry T. Kelly
Henry T. Kelly (*pro hac vice admitted*)
Catherine E. James (*pro hac vice admitted*)
Kelley Drye & Warren, LLP
333 W. Wacker Drive, Suite 2600
Chicago, Illinois 60606
(312) 857-2350
(312) 857-7095 (Fax)
HKelly@KelleyDrye.com
CJames@KelleyDrye.com

Richard E. Aikman
Anne E. Becker
Lewis Kappes
One American Square, Suite 2500
Indianapolis, Indiana 46282
(317) 639-1210
(317) 639-4882 (Fax)
RAikman@Lewis-Kappes.com
ABecker@Lewis-Kappes.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record, hereby certifies that on September 29, 2015 a copy of the foregoing **First Amended Complaint** was filed electronically via the Court's ECF system on the 29th day of September, 2015, and service was made on all parties of record via the Court's ECF system.

                                              s/ Henry T. Kelly
                                                   Henry T. Kelly