UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VIRGIN MOBILE USA, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:15-cv-01105-SEB-DKL |
| | ) | |
| MEMBERS OF THE INDIANA | ) | |
| STATEWIDE 911 BOARD IN | ) | |
| THEIR OFFICIAL CAPACITY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S
## SECOND AMENDED COMPLAINT AND COUNTERCLAIM

Defendants, Members of the Indiana Statewide 911 Board in their official capacities, by counsel, Attorney General Gregory F. Zoeller, Solicitor General Thomas M. Fisher, Deputy Attorneys General Heather Hagan McVeigh and Lara Langeneckert, and attorney Clayton Miller, hereby file this Answer to the Second Amended Complaint ("Complaint") filed in this action by Plaintiff Virgin Mobile USA, L.P. ("Virgin Mobile") and further assert a counterclaim against Virgin Mobile. Each of Virgin Mobile's counts is reproduced below, followed by the Defendants' answer.

## INTRODUCTION

1.     This action is brought in order to challenge Indiana's unlawful adoption of Public Law 157-2015 (the "2015 Amendment"), and Senate Enrolled Act No. 213 (the "2016 Amendment"), which purports to amend Section 36-8-16.6-11 ("Section 11") of the Indiana Enhanced Wireless Prepaid Wireless

Telecommunications Service Charge Act in order to impose prospective surcharges on the providers of Lifeline telephone service to needy Indiana citizens. These fees were imposed by the State's legislature with the illegal intent of dissuading Lifeline service providers from providing a much-needed, federally-mandated service in Indiana.

**ANSWER:** Public Law 157-2015, Senate Enrolled Act No. 213, and Indiana Code section 36-8-16.6-11 speak for themselves. Defendants deny all remaining allegations set forth in paragraph 1 of the Complaint.

2. If the current version of Section 11 is allowed to stand, Virgin Mobile's Lifeline service will be economically unsustainable and could be driven from Indiana's market, thereby harming both Virgin Mobile and its low-income customers.

**ANSWER:** Defendants deny the allegations set forth in paragraph 2 of the Complaint.

3. Virgin Mobile seeks declaratory and injunctive relief to invalidate the 2015 and 2016 Amendments to Section 11 as unlawful, unduly burdensome, and contrary to the intent of the United States Congress in mandating and the Federal Communications Commission ("FCC") in enforcing the Lifeline program.

**ANSWER:** Defendants admit that Plaintiff seeks declaratory and injunctive relief but deny that Plaintiff is entitled to any relief. Defendants deny any remaining allegations set forth in paragraph 3 of the Complaint.

## THE PARTIES

4.     Plaintiff Virgin Mobile is a wholly-owned subsidiary of Sprint Corporation, a corporation lawfully organized pursuant to the laws of the State of Delaware.  Virgin Mobile, a national telecommunications operator, operates as an Eligible Telecommunications Carrier ("ETC") in Indiana and other jurisdictions pursuant to section 214(e)(2) of the Communications Act of 1934 (the "Communications Act").

**ANSWER:** Defendants admit that Plaintiff is an ETC in Indiana. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 4 of the Complaint.

5.     Defendant Members of the Indiana Statewide 911 Board in Their Official Capacity are the members of Defendant Indiana Statewide 911 Board in their official capacity.  The Indiana Statewide 911 Board is a quasi state government agency established by IC § 36-8-16.7, which has statewide jurisdiction over 911 services.

**ANSWER:**  Defendants admit that Plaintiff purports to sue the members of the Indiana Statewide 911 Board in their official capacities.  Indiana Code chapter 36-8-16.7 speaks for itself.  Defendants admit that the Indiana Statewide 911 Board is a body corporate and politic (sometimes termed a "quasi-state government agency") established by Indiana Code § 36-8-16.7-24 to oversee the statewide 911 System, which the Indiana General Assembly

has determined to be an essential government function. Defendants deny any remaining allegations set forth in paragraph 5 of the Complaint because they are vague and ambiguous and call for legal conclusions.

## JURISDICTION AND VENUE

6. This Court has Jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, 2201 and 2202. Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) and (d).

**ANSWER:** 28 U.S.C. sections 1331, 1337, 1391, 2201 and 2202 speak for themselves. Defendants deny the remaining allegations set forth in paragraph 6 of the Complaint because they call for legal conclusions.

## HISTORY OF THE LIFELINE PROGRAM

7. The Communications Act of 1934 outlined the concept of universal service, which envisioned that all people of the United States, so far as possible, retain access to worldwide wire and radio communications services with adequate facilities at reasonable charges. In 1996, Congress passed the Telecommunications Act, which directed the FCC to recommend changes to the FCC's regulations and to promulgate rules in order to implement the universal service mandate.

**ANSWER:** The Communications Act of 1934 and the Telecommunications Act of 1996 speak for themselves. Defendants deny any remaining allegations set forth in paragraph 7 of the Complaint.

8. The federal Lifeline assistance program ("Lifeline" or the "Program") is a universal service program created by the FCC in order to fulfill Congress's mandate of ensuring that all Americans have access to communications services.

The intent of Lifeline is to ensure that all Americans be able to reap the benefits, opportunities and security that reliable phone service brings, including: being able to connect to friends and family, contact emergency services, and find and apply for jobs.

> **ANSWER:** Defendants deny the allegations set forth in paragraph 8 of the Complaint because they are vague and ambiguous.

9.     The Lifeline program assists low-income customers by helping to pay for monthly telephone charges. Through the Program, qualifying low-income consumers are eligible to receive a monthly discount on their phone service, and certain providers – typically prepaid wireless providers such as Virgin Mobile – may allow qualifying consumers to obtain free service. Under the Program, Lifeline eligible customers qualify to receive a $9.25 monthly subsidy from the federal Universal Service Fund ("USF" or the "Fund"), which the ETC applies to the cost of providing services. An ETC may directly pass this subsidy on to the customer in the form of free or low-cost service. The ETC must certify monthly that it passes through the entire $9.25 in subsidies it receives for participating in the Lifeline program to its customers. An ETC can submit for reimbursement from the Fund for each of its customers who are enrolled in the Lifeline program. Each ETC is required to re-certify its subscribers each year.

> **ANSWER:** Defendants admit that the Lifeline program currently provides a subsidy of $9.25 per month for ETCs to provide Lifeline service, which includes access to 911, to their Lifeline-qualified customers. Defendants are

either without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 9 of the Complaint or deny them because they are vague and ambiguous.

10.     Originally, the Lifeline benefit was only available for traditional landline phone service.  In 2005, the Commission extended Lifeline benefits to pre-paid wireless service plans.  Currently, the Lifeline program is available to eligible low-income Americans in every state, territory, commonwealth and on Tribal lands. Throughout the country, there are nearly 2,000 telecommunications companies that provide Lifeline services.  To date, the Lifeline program has provided free or low-cost phone service for well over 100 million low-income Americans.

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Complaint.

11.     In order for a potential subscriber to qualify for a Lifeline program in Indiana, she must either:  (1) earn an income that is at or below 135% of the Federal Poverty Guidelines, or (2) participate in one of the following federal assistance programs:  Medicaid, Supplemental Nutrition Assistance Program ("SNAP"), Supplemental Security Income ("SSI"); Federal Public House Assistance ("Section 8"); Low-Income Home Energy Assistance Program ("LIHEAP"); Temporary Assistance to Needy Families ("TANF"); the National School Lunch Program's Free Lunch Program; Bureau of Indian Affairs General Assistance; Tribally-Administered Temporary Assistance for Needy Families ("TTANF"); Food

6

Distribution Program on Indian Reservations ("FDPIR"); Head Start (if income eligibility criteria are met); or an enumerated state assistance program.

> **ANSWER:** Defendants deny the allegations set forth in paragraph 11 of the Complaint either because Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations or because the allegations are vague and ambiguous.

12.     Approximately half a million Indiana residents qualify for the Lifeline benefit. Out of this number, there are currently only 174,356 Indianans enrolled in a Lifeline service, less than half of the eligible population.

> **ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint.

### VIRGIN MOBILE'S LIFELINE SERVICE

13.     "Assurance Wireless Brought To You By Virgin Mobile" ("Assurance"), a Lifeline service offered by Virgin Mobile, provides free and low-cost cellular phone service to low-income Americans. Assurance service provides Assurance subscribers with the same features and functionality that all other Virgin Mobile customers enjoy, with the crucial distinction that Assurance subscribers receive 250 "anytime" prepaid minutes and unlimited text messages each month free of charge. Assurance subscribers also receive, at no additional charge, voice mail, caller I.D., and call waiting. Virgin Mobile does not assess any taxes and fees on its Assurance subscribers for this plan.

7

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

14. Assurance subscribers are able to purchase additional minutes for $0.10 per minute. Subscribers may also choose to "Top-Up" by, for example, purchasing an additional 250 minutes per month for $5.00, or by purchasing unlimited minutes for a month for $30.00.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

15. Assurance does not require a credit-check or a long-term service contract as a prerequisite for obtaining Assurance service. Though Assurance service is often referred to as a "prepaid" service, when the subscriber enrolls in Assurance's plan, the components of which are free of charge to the subscriber, the Assurance subscriber does not pay for the plan and no "retail transaction" takes place. Assurance does not and has never issued monthly bills to its customers.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

16.     Unless they choose to "Top-Up" by purchasing additional minutes or by exceeding their allocation of 250 "anytime" prepaid minutes, Assurance customers are never charged for their Assurance cellular phone service.

> **ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

17.     A majority of Assurance subscribers do not pay out-of-pocket for their service.   Most have never "Topped-Up," or added money to, their Assurance accounts to purchase additional services.  Of the few who have chosen to "Top-Up," the average amount added to a subscriber account in a single month is minimal. Since Virgin Mobile does not require a credit check or payment information to enroll in the Assurance Lifeline plan, Virgin Mobile does not have a credit card on file for most of its Lifeline customers.

> **ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

18.     A majority of Assurance subscribers are enrolled in a public assistance program.  Almost all of those subscribers receive food stamps or Medicaid support. The majority of Assurance subscribers have household incomes significantly below the federal poverty line.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

19. Many Assurance subscribers had never owned a cell-phone before receiving their free Assurance phone service due to financial constraints or poor credit history. Before enrolling in an Assurance Wireless Lifeline plan, many subscribers had gone over a year without phone service.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

20. For almost all of Assurance subscribers, their Lifeline wireless phone is the only phone in their household. A majority of Assurance subscribers use their Assurance phone to pursue employment or remain employed.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

21. Virgin Mobile currently provides free or low-cost service to over two million Assurance subscribers nationwide. Overall, Assurance subscribers are very

satisfied with the quality of service they receive, as over three-fourths of Assurance subscribers say their Assurance Wireless service is better than expected.

> **ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

## VIRGIN MOBILE IS APPROVED AS AN INDIANA LIFELINE PROVIDER

22. Pursuant to FCC requirements, Virgin Mobile must submit an ETC application for each state in which it wishes to provide Lifeline services. In compliance with these requirements, Virgin Mobile submitted its ETC application to provide Lifeline services to low-income Indiana citizens to the Indiana Utility Regulatory Commission (the "Commission") in January of 2010. On November 10, 2010, the Commission granted Virgin Mobile's ETC application.

> **ANSWER:** Defendants admit that Virgin Mobile submitted an ETC application to the Indiana Utility Regulatory Commission ("the Commission") and that the Commission granted that application. Defendants deny the remaining allegations set forth in paragraph 22 of the Complaint because they are vague and ambiguous.

23. In granting Virgin Mobile ETC status, the Commission concluded that allowing Virgin Mobile to enter the Lifeline market in Indiana would increase customer choice, promote competition and expand the availability of wireless services to qualifying Indiana customers, leading to lower prices.

**ANSWER:** The Commission's Order speaks for itself. Defendants deny any remaining allegations set forth in paragraph 23 of the Complaint because they are vague and ambiguous.

24. As of April 2015, Virgin Mobile provided Lifeline service to over 53,000 Assurance Lifeline subscribers in Indiana.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint; furthermore, defendants deny those allegations because they are vague and ambiguous.

## INDIANA ENACTS LEGISLATION TARGETING LIFELINE PROVIDERS

25. Pursuant to IC § 36-8-16.7-29, Indiana law currently imposes a monthly 911 surcharge on wireless cellphone subscribers in order to recover the cost of establishing a 911 emergency services telephone system. This surcharge is levied on wireless cellphone subscribers (not wireless cellphone providers). Indiana law allows wireless cellphone providers to collect this fee on behalf of the State, and allows wireless cellphone providers to retain one percent of all fees they collect to cover the costs of collection and remission to the Indiana Statewide 911 Board. Indiana law also currently imposes a 911 surcharge on prepaid wireless subscribers who "Top-Up" by purchasing prepaid wireless cellphone cards on an ad-hoc basis. This fee on prepaid subscribers is collected from the subscriber at the point of sale at the time the retail transaction occurs.

**ANSWER:** Indiana Code section 36-8-16.7-29 speaks for itself. As to the remaining allegations set forth in paragraph 25 of the Complaint, Defendants are either without knowledge or information sufficient to form a belief as to the truth of them or deny them because they are vague and ambiguous.

26. Public Law 157-2015 was adopted by the Indiana legislature on May 4, 2015. In pertinent part, the 2015 Amendment to Section 11 amended IC § 36-8-16.6-11 of the Indiana Enhanced Wireless Prepaid Wireless Telecommunications Service Charge Act to impose prospective surcharges on the providers of Lifeline phone service to economically disadvantaged households in order to recover the cost of establishing a 911 emergency services telephone system. This new surcharge is imposed in addition to (and not instead of) the two 911 surcharges already levied on wireless cellphone subscribers.

**ANSWER:** Public Law 157-2015 and Indiana Code section 36-8-16.6-11 speak for themselves. Defendants deny any remaining allegations set forth in paragraph 26 of the Complaint because they are vague and ambiguous and call for legal conclusions.

27. Effective September 1, 2015, the 2015 Amendment to Section 11 imposed a monthly recurring charge of $1.00 on Virgin Mobile for each subscriber on whose behalf it receives $9.25 in federal subsidy from the Universal Service Fund. IC § 36-8-16.6-11(e)(2). This new $1.00 fee is not imposed on non-Lifeline communications carriers. Effective March 21, 2015, the 2016 Amendment to Section 11 re-numbered the obligation. IC § 36-8-16.6(d) (collectively referred to as

13

the "Monthly Charge"). Pursuant to federal regulations, Virgin Mobile must certify monthly that it passes through the entire $9.25 in subsidies it receives for participating in the Lifeline program to Virgin Mobile customers in the form of service. Therefore, the additional $1.00 fee per subscriber would necessarily be borne by Virgin Mobile unless and until a mechanism could be found in order to collect the additional fee from the customer.

> **ANSWER:** The statutes and regulations cited in paragraph 27 of the Complaint speak for themselves. Defendants deny any remaining allegations set forth in paragraph 27 of the Complaint because they are vague and ambiguous and call for legal conclusions. Defendants specifically deny that "the 2016 Amendment to Section 11" cited in paragraph 27 of the Complaint was effective in 2015.

28. If the Monthly Charge on Indiana Lifeline Providers is allowed to be enforced, Virgin Mobile will be forced to pay substantial fees for each of its Indiana-based Lifeline customers, making it economically unsustainable for Virgin Mobile to provide Lifeline services in the State of Indiana.

> **ANSWER:** Indiana Code section 36-8-16.6-11 speaks for itself. As to the remaining allegations set forth in paragraph 28 of the Complaint, Defendants are either without knowledge or information sufficient to form a belief as to the truth of them or deny them because they are vague and ambiguous.

29. Because Virgin Mobile does not require its Assurance subscribers to provide any payment information in order to obtain the Assurance service,

Amended Section 11 will place a disproportionate burden on Virgin Mobile, as it will have no effective way to recover these new fees from Assurance subscribers short of a costly reconfiguration of its intake and billing process. Furthermore, any such reconfiguration, if it was undertaken, would force Virgin Mobile to charge fees to all its Assurance customers, whether or not they had paid the fee in connection with a retail "Top-Up" transaction. This modification to the Indiana Assurance program would doubtless cause a large portion of Indiana Assurance subscribers to drop out of the Assurance program.

**ANSWER:** Indiana Code section 36-8-16.6-11 speaks for itself. As to the remaining allegations set forth in paragraph 29 of the Complaint, Defendants are either without knowledge or information sufficient to form a belief as to the truth of them or deny them because they are vague and ambiguous.

30. If the Monthly Charge on Indiana Lifeline providers is allowed to be enforced, Virgin Mobile will not be able to pass on the new Lifeline 911 fee imposed by the 2015 and 2016 Amendments to its subscribers, making it economically unsustainable for Virgin Mobile to provide Lifeline services. This will result in a decrease in competition and consumer choice, and may widen the gap of underserved customers in Indiana, whose Lifeline-eligible population is already grossly underserved.

**ANSWER:** Indiana Code section 36-8-16.6-11 speaks for itself. As to the remaining allegations set forth in paragraph 30 of the Complaint, Defendants are either without knowledge or information sufficient to form a belief as to

15

the truth of them or deny them because they are vague, ambiguous, and speculative.

31.     Upon information and belief, other Lifeline carriers in Indiana may also decide that the Monthly Charge makes it no longer financially feasible to operate Lifeline programs in Indiana.

**ANSWER:**  Indiana Code section 36-8-16.6-11 speaks for itself.  As to the remaining allegations set forth in paragraph 31 of the Complaint, Defendants are either without knowledge or information sufficient to form a belief as to the truth of them or deny them because they are vague, ambiguous, and speculative.

32.     If the Monthly Charge on Indiana Lifeline providers is allowed to be enforced there is a real risk that customers who would otherwise have been eligible for Lifeline benefits pursuant to the mandates of Congress and the regulations of the FCC, will have no method of obtaining those benefits.  The Monthly Charge will thereby deprive some of the poorest households in Indiana of telephone service.

**ANSWER:**  Indiana Code section 36-8-16.6-11 speaks for itself.  As to the remaining allegations set forth in paragraph 32 of the Complaint, Defendants are either without knowledge or information sufficient to form a belief as to the truth of them or deny them because they are vague and ambiguous and speculative.

**THE MONTHLY CHARGE IS PREEMPTED BY FEDERAL LAW**
**(AGAINST ALL DEFENDANTS)**

33.     Virgin Mobile repeats and incorporates paragraphs 1 through 32 as if set forth fully herein.

> **ANSWER:**    Defendants repeat and incorporate their responses to the allegations set forth in paragraphs 1 through 32 as if set forth fully herein.

34.     The Monthly Charge substantially and illegally interferes with the intention of Congress and the FCC in establishing the Lifeline program for economically disadvantaged households.  The express intent of the Lifeline program is to provide communications services at reasonable charges to low-income households.  By levying both a prospective and a retrospective $1.00 surcharge on a Lifeline Provider for each of their Lifeline subscribers, the Monthly Charge strives to undermine the intent of Congress by making this mandate difficult if not impossible.

> **ANSWER:**  Defendants deny the allegations set forth in paragraph 34 of the Complaint because they are vague and ambiguous and call for legal conclusions.

35.     The Monthly Charge, if allowed to be enforced, will render the Lifeline program financially unfeasible in the State of Indiana, creating an obstacle to the accomplishment and execution of the full objectives of Congress.  The Monthly Charge is therefore invalid pursuant to the Supremacy Clause of the United States Constitution, Art. VI, Cl. 2.

**ANSWER:** Defendants deny the allegations set forth in paragraph 35 of the Complaint because they are vague and ambiguous and call for legal conclusions.

36. Accordingly, Virgin Mobile is entitled to declaratory and injunctive relief on this count as described in its prayer for relief.

**ANSWER:** Defendants deny the allegations set forth in paragraph 36 of the Complaint.

## COUNT II

**THE MONTHLY CHARGE VIOLATES THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**
**(AGAINST ALL DEFENDANTS)**

37. Virgin Mobile repeats and incorporates paragraphs 1 through 36 as if set forth fully herein.

**ANSWER:** Defendants repeat and incorporate their responses to paragraphs 1 through 36 as if set forth fully herein.

38. The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S[.] Const. amend. XIV, § 1. By intentionally singling out only Lifeline providers to pay a 911 service fee, where all non-Lifeline wireless cellphone providers do not have to pay such a fee, the Monthly Charge discriminates against Virgin Mobile and other Lifeline Providers, does not satisfy rational basis review, and is therefore violative of the Fourteenth Amendment's Equal Protection Clause.

**ANSWER:** The Equal Protection Clause of the Fourteenth Amendment speaks for itself. Defendants deny the remaining allegations set forth in paragraph 38 of the Complaint.

39. Enforcement of the Monthly Charge would require Virgin Mobile to make a difficult and unduly harsh choice: (i) purge its business model of all Lifeline subscribers in Indiana to avoid the 911 fee liability; or (ii) endure the unlawful change in law. Regardless of the path Virgin Mobile or other Lifeline Providers will take, Virgin Mobile and similarly situated Lifeline Providers will face a substantial financial burden negatively impacting their ability to provide Lifeline service in Indiana. This singling out of Lifeline providers is violative of the Equal Protection Clause, as it requires only Lifeline Providers (and not other telecommunication providers) to expend greater internal financial and human resources to ensure its retroactive and prospective compliance.

**ANSWER:** Defendants deny the allegations set forth in paragraph 39 of the Complaint because they are vague and ambiguous and call for legal conclusions.

40. Accordingly, Virgin Mobile is entitled to declaratory and injunctive relief on this count as described in its prayer for relief.

**ANSWER:** Defendants deny the allegations set forth in paragraph 40 of the Complaint.

# PRAYER FOR RELIEF

WHEREFORE, Virgin Mobile respectfully requests that this Court grant it the following relief:

(1)     Declare that the Monthly Charge imposed by Indiana Code sections 36-8-16.6-11(e)(2) (from July 1, 2015 until March 20, 2016) and 36-8-16.6-11(d) (after March 20, 2016) violate[s] federal law;

(2)     Permanently enjoin Defendants from enforcing any provision of the Monthly Charge imposed by Indiana Code sections 36-8-16.6-11(e)(2) (from July 1, 2015 until March 20, 2016) and 36-8-16.6-11(d) (after March 20, 2016) or any other law inconsistent with the relief sought on Counts I-II; and

(3)     Award Virgin Mobile such other and further relief as the Court deems just and proper.

**ANSWER:**   The State denies any factual allegations set forth in paragraphs (1) through (3) of Plaintiff's "Prayer for Relief" and denies that Plaintiff is entitled to any of the relief requested therein.

# AFFIRMATIVE DEFENSES

1.     One or more claims asserted by Plaintiff fail to state a claim on which relief can be granted.

2.     Plaintiff's rights, privileges, and immunities secured under the Constitution or laws of the United States have not been violated by any alleged action, inaction, or omission of Defendants, who at all times have acted in

compliance and consistent with the Constitution and laws of the United States and of the State of Indiana.

3. The statutes, rules, and policies challenged are not discriminatory and, in any event, advance legitimate and compelling public purposes.

4. The statutes, rules, and policies challenged are constitutional and are in no way preempted by federal law.

The State reserves the right to raise affirmative defense in the future as needed or warranted by investigation or discovery.

## COUNTERCLAIM

COME NOW, the Members of the Indiana Statewide 911 Board in their official capacities, who, acting as the Indiana Statewide 911 Board ("the Board"), bring this counterclaim under Fed. R. Civ. P. 8(a) against Virgin Mobile USA, L.P. ("Virgin Mobile"). The Board supports its claim as follows:

## SUMMARY OF THE COUNTERCLAIM

1. This is an action for an accounting, for a declaratory judgment under 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ P. 57, and for damages in the form of past-due and ongoing charges to the Indiana Department of State Revenue ("Department") for deposit into the statewide 911 fund ("the 911 Fund").

2. As a provider of prepaid wireless telecommunications services, Virgin Mobile is obligated to collect and remit to the Department, for deposit into the 911 Fund, enhanced prepaid wireless charges (hereafter, "911 Fee") in order to fund the uniform statewide 911 system (hereafter, "911 System").

3.     As a provider designated by the Indiana Utility Regulatory Commission (hereafter, the "IURC") as an eligible telecommunications carrier ("ETC") for purposes of receiving payment from the Universal Service Fund, Virgin Mobile has been directly liable since July 1, 2015 for all 911 Fees in connection with providing Lifeline wireless service ("Lifeline"). That fee is $1.00 per Lifeline customer per month.

4.     The Universal Service Fund was established by the federal government and is funded by non-governmental users of the telecommunications system in the United States to subsidize services such as Lifeline.

5.     Lifeline is a federal government benefit program designed to provide discounts on monthly telephone service for eligible low-income subscribers to help ensure they can connect to the nation's communications networks, find jobs, access health care services, connect with family and their children's schools, and call help in an emergency.

6.     Before a provider is declared eligible to receive payment from the Universal Service Fund for its provision of Lifeline service, the provider must demonstrate that the Lifeline service it will provide includes access to 911.

7.     Each of the IURC orders granting the Virgin Mobile's ETC application includes an obligation "to pay applicable fees, such as" the 911 Fee. Typical is the language from Virgin Mobile's IURC order issued on November 10, 2010 in Cause No. 41052 ETC-55: "Virgin Mobile shall continue to pay applicable fees, such as …

the wireless emergency enhanced 911 fee pursuant to IC 36-8-16.5-30.5 and any other applicable fees."

8.     Virgin Mobile has failed and refused to pay the Department the 911 Fees as required by law for the Lifeline service that they provide to customers in Indiana despite receiving hundreds of thousands of dollars each month for the provision of Lifeline service since July 1, 2015.

## PARTIES

9.     The Board is a body corporate and politic (sometimes termed a "quasi-state government agency") established by Indiana Code §36-8-16.7-24 to oversee the statewide 911 System, which the Indiana General Assembly has determined to be an essential government function.

10.     Defendant Virgin Mobile is incorporated in the state of Delaware with its home office in Shawnee Mission, Kansas.  Virgin Mobile's registered office and agent in Indiana is: Corporation Service Company, 251 E. Ohio Street, Suite 500, Indianapolis, Indiana  46204.

11.     The Board asserts this Counterclaim so that the Court may determine Virgin Mobile's liability under the amended statute for monthly 911 fees due on or after July 1, 2015, forward, at the same time it adjudicates Virgin Mobile's challenge to the validity of amended statute.  The Board has agreed to stay Virgin Mobile's payment obligations under the amended statute pending resolution of this claim or until November 1, 2016, whichever comes sooner.

## JURISDICTION AND VENUE

12.     This Court has supplemental jurisdiction over this counterclaim under 28 U.S.C. § 1367(a).

13.     Venue is proper in this Court. Pursuant to 28 U.S.C. § 1391, Virgin Mobile has been designated by the IURC as an ETC and has provided Lifeline wireless service to customers throughout Indiana.  Accordingly, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

14.     The Indiana General Assembly has established in this state the 911 System.

15.     In order to fund the 911 System, the Indiana General Assembly has further established the 911 Fund.

16.     Virgin Mobile is a provider of prepaid wireless telecommunications services and is designated by the IURC as an ETC for purposes of receiving payments from the Lifeline wireless service program.

## CLAIM FOR RELIEF

17.     The Board incorporates by reference, as if fully restated herein, paragraphs 1 through 16 of its Counterclaim.

18.     Since July 1, 2015, when the amended Ind. Code § 36-8-16.6-11 took effect, the 911 Fee imposed against wireless service providers in Indiana has been $1.00 for each Lifeline customer.  Section 11 was amended in both 2015 and 2016. The 2016 amendment did not reduce the amounts sought from Virgin Mobile.

19.     Since July 1, 2015, Virgin Mobile has continued to receive payments from the Universal Service Fund in exchange for providing Lifeline service to Indiana residents.

20.     Despite continuing to receive payments from the Universal Service Fund each month, Virgin Mobile has failed to pay the 911 Fee to the Department.

21.     Pursuant to Ind. Code § 36-8-16.7-27(a)(1), among the powers expressly granted by the legislature to the Board is the power to sue. Ind. Code § 36-8-16.6-21 also authorizes the Board to initiate a collection action for unpaid 911 fees. That statute also provides that a court finding for the Board "may award reasonable costs and attorney's fees associated with the collection action."

22.     Since July 1, 2015, Virgin Mobile's Lifeline consumers have continued to have access to vital 911 services within the state of Indiana, yet because Virgin Mobile has refused to remit the 911 Fee to the Department, the 911 Fund has been underfunded at the expense of other consumers of telecommunications services in Indiana.

23.     The refusal to pay constitutes a breach of statutory obligations and obligations under Virgin Mobile's IURC order approving its ETC, which required Virgin Mobile "to pay applicable fees," such as "the 911 Fee."

24.     Virgin Mobile should be required to pay all past due amounts, from July 1, 2015 to the conclusion of this Action, plus applicable statutory interest and attorneys' fees along with any penalties and fees assessed pursuant to the Department's guidelines.

25.     Further, Virgin Mobile should be required to make an accounting of all Lifeline service provided in the state of Indiana, including the number of Lifeline customers in each month since July 1, 2015, as well as any other information required to determine the amount owed by Defendants to the Department.

26.     The Board has been damaged as a result of Virgin Mobile's refusal to pay the statutorily-required 911 Fee.  Accordingly, the Board is entitled to judgment in its favor against Virgin Mobile, as more fully described in its request for relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, the Indiana Statewide 911 Board requests that this Court:

1. order an accounting from Virgin Mobile;

2. enter judgment against Virgin Mobile of all amounts due and owing for its provision of service since July 1, 2015, plus any applicable statutory interest, penalties and fees;

3. enter a declaratory judgment against Virgin Mobile for future amounts due under amended Ind. Code § 36-8-16.6-11;

4. enter judgment against Virgin Mobile for the Board's attorneys' fees and costs in this case; and

5. for all other relief just and proper in the premises.

Respectfully submitted,


GREGORY F. ZOELLER
Indiana Attorney General

By:   *s/ Thomas M. Fisher*
Thomas M. Fisher
Solicitor General

Heather Hagan McVeigh
Lara Langeneckert
Deputy Attorneys General

Office of the Attorney General
Indiana Government Center South
Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Phone: (317) 232-6255
Fax:  (317) 232-7979
Tom.Fisher@atg.in.gov


Clayton C. Miller
BAMBERGER, FOREMAN,
OSWALD & HAHN, LLP
201 N. Illinois St., Suite 1225
Indianapolis, Indiana  46204
cmiller@bamberger.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Answer to Plaintiff's Second Amended Complaint was duly served upon the counsel listed below by operation of the Court's CM/ECF system on June 8, 2016:

Anne E. Becker
Richard Emerson Aikman, Jr.
Manuel Herceg
LEWIS & KAPPES, PC
One American Square, Suite 2500
Indianapolis, Indiana 46282
abecker@lewis-kappes.com
raikman@lewis-kappes.com
mherceg@lewis-kappes.com

Henry T. Kelly
Catherine E. James
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, Illinois 60606
HKelly@KelleyDrye.com
CJames@KelleyDrye.com

*s/ Thomas M. Fisher*
Thomas M. Fisher
Solicitor General

Office of the Attorney General
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Phone: (317) 232-6255
Fax: (317) 232-7979
Email: Tom.Fisher@atg.in.gov